**In the Interest of R.M.**

No. 04–02–00435–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 9, 2002.

David L. McLane, The McLane Law Firm, San Antonio, for Appellant.

Kerrisa J. Chelkowski, Assistant Criminal District Attorney, Cadena-Reeves Justice Center, for the State.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, KAREN ANGELINI, Justice.

Opinion by: KAREN ANGELINI, Justice.

Appellant R.M. appeals from her court-ordered temporary commitment for mental health services to the San Antonio State Hospital for a period not to exceed ninety days. R.M. brings three issues on appeal.

We overrule all issues and affirm the judgment of the trial court.

## BACKGROUND

On June 11, 2002, having found that R.M. was mentally ill and met the criteria for court-ordered temporary mental health services, the trial court ordered R.M. to be temporarily committed for inpatient mental health services pursuant to section 574.034 of the Texas Health and Safety Code. By separate order, the court authorized treatment with psychoactive medication during R.M.'s temporary commitment.[1]

## SUFFICIENCY OF THE EVIDENCE

A judge in Texas has the power to order temporary inpatient mental health services if she finds from clear and convincing evidence that:

(1) the proposed patient is mentally ill; and

(2) as a result of that mental illness the proposed patient:

  (A) is likely to cause serious harm to himself;

  (B) is likely to cause serious harm to others; or

  (C) is:

    (i) suffering severe and abnormal mental, emotional, or physical distress;

    (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

    (iii) unable to make rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon Supp.2002). To be clear and convincing evidence under this section, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the proposed patient or others, or the proposed patient's distress and the deterioration of the proposed patient's ability to function. *Id.* § 574.034(d). Expert testimony recommending involuntary temporary commitment must be supported by a factual basis; a bald diagnosis alone is insufficient to support commitment. *In re Breeden,* 4

---

1. R.M. was ordered to be temporarily hospitalized for a period of time not to exceed ninety days. R.M., therefore, should have been released on or before September 11, 2002. Although R.M. is no longer subject to the trial court's orders, this appeal is not moot. In *State v. Lodge,* 608 S.W.2d 910, 911–12 (Tex.1980), the supreme court held that the doctrine of mootness does not apply to appeals from involuntary commitments for temporary hospitalization. The court noted that "commitment to a mental hospital 'can engender adverse social consequences to the individual' whether it is labeled a 'stigma' or if it is called something else." *Id.* at 912. This stigma continues even after the individual is released. *See id.* We believe this same analysis also extends to the order compelling psychoactive medication, because the order recites that R.M. meets all the terms and requirements of the Texas Health and Safety Code and is in "need of psychoactive medication and is lacking in the capacity to make a decision regarding the administration of the medications." Thus, even though the order compelling psychoactive medications has expired, R.M.'s appeal with respect to the order is not moot. *But see In re E.B.,* 962 S.W.2d 304, 305 (Tex.App.-Beaumont 1998, no pet.) (holding expired order compelling psychoactive medication moot but failing to address whether analysis in *Lodge* would extend to such an order).

S.W.3d 782, 784 (Tex.App.-San Antonio 1999, no pet.).

Here, the trial court found that R.M. is mentally ill and that as a result of that mental illness, R.M. (1) is likely to cause serious harm to self, (2) is likely to cause serious harm to others, (3) is suffering severe and abnormal mental, emotional or physical distress, (4) is experiencing substantial mental or physical deterioration of her ability to function independently, which is exhibited by R.M.'s inability, except for reasons of indigence, to provide for her basic needs, including food, clothing, health or safety, and (5) is unable to make a rational and informed decision as to whether or not to submit to treatment. Although R.M. does not dispute that she is mentally ill, she does contest that there is legally and factually sufficient evidence to support these findings.

In considering R.M.'s no-evidence challenge, we review all the evidence in the light most favorable to the trial court's findings, including every reasonable inference in favor of those findings to determine whether more than a scintilla of evidence supports the challenged findings. *In re Breeden*, 4 S.W.3d at 785. In the context of the State's heightened burden of proof, we will sustain a no-evidence challenge if the evidence is insufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the facts. *Id.* In reviewing R.M.'s factual sufficiency challenge, we may set aside the findings only if a review of all the evidence demonstrates that the evidence which supports the findings is so weak as to be clearly wrong and manifestly unjust. *Id.*

This is R.M.'s fourth admission to the State Hospital. At the commitment hearing, Dr. Henry Hare testified that R.M. suffers from a "schizoaffective disorder, bipolar type" and that her mental illness substantially impairs her thought, percep-

tion of reality, emotional process, or her judgment. In Dr. Hare's opinion, R.M. is likely to cause serious harm to herself. He based his opinion on what R.M. had told him. According to Dr. Hare, R.M. was lighting many candles around the house for religious reasons and then leaving them unattended. Dr. Hare testified that R.M. had also accepted a ride from a stranger and that her judgment is so impaired that she is a "sitting duck for anybody who wants to take advantage of her." In Dr. Hare's opinion, R.M. is "so provocative that she would provoke people into violence toward her." Dr. Hare also testified that R.M. is delusional and believes that "people are against her and trying to do harmful things to her." R.M. is refusing treatment, and in Dr. Hare's expert opinion, she will continue to get worse without treatment.

R.M.'s mother, Rachel, also testified that R.M. engages in dangerous patterns when she refuses to take her medication. She leaves the family home in the middle of the night, walking the deserted streets, so that she can go to her church and pray. She accepts rides from strangers and in one instance, was robbed by one such stranger. In the past, she has lit many candles for religious reasons and then left them unattended. Rachel testified that R.M. has begun to get the candles out again and that they are "ready to be lit up." R.M.'s father, Valentine, confirmed his wife's testimony, emphasizing that when R.M. is on her medication, she exercises good judgment. However, when she is not taking her medication, R.M. goes to her church alone in the middle of the night until the early hours of the morning and walks home along deserted streets.

Dr. Hare's testimony, along with the testimony of R.M.'s mother and father, established a continuing pattern of behavior that tends to confirm the likelihood of

R.M.'s causing serious harm to herself. *See Mezick v. State*, 920 S.W.2d 427, 431 (Tex.App.-Houston [1st Dist.] 1996, no writ). We conclude that the trial judge, as fact finder, could have reasonably found, by clear and convincing evidence, that R.M. is likely to cause serious harm to herself, and thus, that section 574.034(a)(2)(A) has been satisfied. Although we note that R.M. testified that she will not harm herself, we hold that the evidence is factually sufficient to support a finding under subsection 574.034(a)(2)(A). Because only one statutory criterion must be met under section 574.034(a)(2) to form the basis of the trial court's order for temporary mental health services, we need not determine whether there was sufficient evidence to satisfy subsections 574.034(a)(2)(B) and (C). We overrule R.M.'s first and second issues.

### ADMINISTRATION OF PSYCHOACTIVE MEDICATIONS

■ In her final issue, R.M. argues that the trial court erred in ordering the administration of psychoactive medications after she had asserted that such an order would interfere with her religious beliefs in violation of the First and Fourteenth Amendments to the United States Constitution and Article 1, Section 4 of the Texas Constitution. Generally, the State must demonstrate a compelling interest to justify a law or governmental action that substantially interferes with an individual's religious beliefs or practices. *See Wisconsin v. Yoder*, 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). However, some commentators have interpreted *Employment Division v. Smith*, 494 U.S. 872, 879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), as substantial retreat from *Yoder*'s requirement that the State show a compelling interest. *See Scott v. State*, 80 S.W.3d 184, 192–93 (Tex.App.-Waco 2002, no pet.) (noting *Smith* determined that the Free Exer-

cise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)" and that many, as a result, view *Smith* as a significant retreat from prior decisions requiring government to establish "compelling interest" to justify a law which substantially interferes with a person's religious beliefs or practices). Whether or not the Supreme Court has lessened the government's burden, the Texas Legislature still requires a government agency to demonstrate a compelling governmental interest. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 110.003(b) (Vernon Supp.2002); *Scott*, 80 S.W.3d at 193.

Here, however, R.M. has wholly failed to demonstrate that the order permitting the administration of psychoactive medication substantially burdened her free exercise of religion. R.M. testified that she is very religious and a devout Catholic. She did not testify that taking the psychoactive medication would be in violation of her religious beliefs. Instead, R.M. simply testified that she did not like the effects of the medication:

> Well, I—I—I have—I want to read books, I want to write, and I want to develop my talents. On medication, I can't read. On medication, I can't hold a pen. On medication, I can't keep a job to make money to pay for the professionals who can enrich—enrich my life as far as talents are concerned, like singing. It's very expensive. And they deserve that—that expense, because it's a beautiful thing to be able to sing the best you can and to learn from people who are devoted to that skill and developing that talent. I want to serve the Lord Jesus Christ, and anyone who says

I have to be on medication, I believe, is standing in my way.

On cross-examination, R.M. was asked, "And your religious beliefs don't affect you going to the Center for Health Care Services?" R.M. replied,

It's not the religious beliefs. It's like I want to go [to] people whose heart— people whose hearts are in the right place and good. I believe Dr. Vander-pool [at the Center for Health Care Services] can help me. *If he wants me on medication, I'd be willing to listen to him.*

(emphasis added). R.M.'s testimony failed to show that the trial court's order substantially burdened her free exercise of religion. We need not, therefore, determine whether the State had sufficiently shown a compelling interest. We overrule R.M.'s last issue.

### CONCLUSION

Having overruled all issues, we affirm the judgment of the trial court.