Reversed and Rendered and Memorandum Opinion filed December 23, 2003









Reversed and Rendered and Memorandum Opinion filed
December 23, 2003.

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00379-CV

NO. 14-03-00380-CV

____________

 

FOR THE BEST INTEREST AND
PROTECTION OF J.J.K.,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the Probate
Court

Galveston County, Texas

Trial Court Cause Nos. 925
& 925A

 



 

M E M O R A N D U M  O
P I N I O N

In appellate cause number 14-03-00379-CV (trial cause number
925), following a hearing before the bench, the probate court granted an
application to commit appellant J.J.K. for court‑ordered temporary mental
health services.  In appellate cause
number 14-03-00380-CV (trial cause number 925A), the trial court granted an
application to administer psychoactive medications to appellant.  Concluding the evidence is legally
insufficient to support the trial court=s commitment order, we reverse
both orders of the trial court and render judgment denying the applications.








FACTUAL AND PROCEDURAL BACKGROUND

On March 16, 2003, appellant was found wandering the streets
in Alvin, Texas.  EMS was called,
determined appellant was hypoglycemic, and transported her to the emergency
room at the University of Texas Medical Branch of Galveston.  In the emergency room, appellant reportedly
had Aflight of ideas, rapid speech
and required sedation.@

On March 19, 2003, a physician filed an application for
court-ordered temporary mental health services, requesting the court to commit
appellant to the Austin State Hospital for inpatient psychiatric
treatment.  On March 24, 2003, a hearing
officer found probable cause to hold appellant pending a final hearing.

On March 26, 2003, the probate court held a bench trial to
determine whether to grant the application for court ordered temporary mental
health services.  The State called two
witnesses:  Michael Fields, Program
Director at Gulf Coast Center where appellant was detained pending trial, and
Dr. John Bryan, a licenced physician, board eligible
in psychiatry, who evaluated appellant. 
Both recommended that appellant be treated at Austin State Hospital.

Based on his examination, Bryan diagnosed appellant as
mentally ill, suffering from  bipolar
disorder in manic state with psychotic features.  Bryan testified that during appellant=s recent hospital stay, she was
becoming more and more agitated and had to be physically restrained and locked
in a seclusion room.  While locked in the
room, she knocked the door off the hinges and had to be placed in a different
seclusion room.  Bryan also testified
appellant had verbal altercations with her peers, but had not been Aphysically grabby.@  He stated that as a result of these
situations and his evaluation, he believed that she could end up causing harm
to others or herself by hitting herself or by making another person angry to
the point where they would cause harm to her. 
He admitted, however, appellant had not physically struck anyone and had
not hurt herself or anyone else while she was hospitalized.








Bryan also testified appellant exhibits continuing patterns
of behavior, such as becoming agitated and angry.  She continues to relapse Aquickly and seriously,@ requiring hospitalization on
two previous occasions, and returning to the hospital within a week both times.

Bryan further testified he believed appellant was (1)
suffering severe abnormal mental, emotional, or physical distress; (2)
experiencing substantial mental or physical deterioration[1]
of her ability to function independently and that the deterioration is
exhibited by her inability, except for reasons of indigence, to provide for the
proposed patient=s basic needs, including food,
clothing, health, or safety;[2] and (3) that she was unable to make
rational and informed decisions as to whether or not to submit to the
treatment.  Additional evidence indicated
appellant (1) told Bryan she was half vulcan or an
elf; (2) said
that if she were sent to Austin State Hospital there would be a lot of dead
bodies; (3) told another physician she had her baby taken away from her at the
hospital while she was raped; (4) said she hates her doctor and he is from
outer space; (5) believed one of the hospital residents was her husband; and
(6) believed she was pregnant with 22 kids.

Appellant testified on her own behalf, stating she is
sensitive to drugs and the wrong medications cause her to be delusional.  She further testified she is currently on the
right medications and responding to them correctly.  On direct examination appellant
testified  (1) she does not believe she
is an elf or a vulcan and that she invents these
stories as protection  so people will not
know her; (2) she knows she is not married to the doctor; (3) she knows her
address; (3) she wants
to live in her apartment; and (4) she is willing to take the medicine
prescribed by the doctor.








After evaluating the testimony, the court found appellant
was suffering from a mental illness and as a result of the mental illness was
likely to cause serious harm to herself and others and was suffering severe and
abnormal mental, emotional, or physical distress; experiencing substantial
mental or physical deterioration of her ability to function independently,
which was exhibited by her inability, except for reasons of indigence, to provide
for her  basic needs, including food,
clothing, health, or safety; and unable to make rational and informed decisions
as to whether or not to submit to the treatment.[3]  The court ordered appellant committed to
Austin State Hospital for a period not to exceed ninety days.           The
court then conducted a bench trial on the application to administer
psychoactive medication.  Bryan testified
appellant lacked the capacity to make the decision regarding the administration
of psychiatric medication because of her mental illness.  He recommended antipsychotics,
mood stabilizers, anxiolytics, sedatives, hypnotics
and antidepressants.  Bryan stated
appellant=s prognosis is fair if she
takes the medication, but without it, he believes she would continue to suffer
from mental illness, possibly killing herself or someone else if she did not
take the medications.  Bryan, however,
acknowledged appellant had never directly threatened anyone.  At the conclusion of the testimony, the court
ordered that the Texas Department of Mental Health was authorized to administer
the psychoactive medication.

DISCUSSION

Legal Standards, Burden of Proof, and Standards of Review

In issue one, appellant argues the evidences was legally
insufficient to support the Order for Temporary Inpatient Mental Health
Services and the Order to Administer Psychoactive Medication.  In issue two, she argues the evidence was
factually insufficient to support these orders.[4]








A trial court may order the commitment of a person to a
temporary inpatient mental health service for ninety days if it finds from
clear and convincing evidence that:

(1) the proposed patient is mentally
ill;  and

(2) as a result of that mental illness
the proposed patient:

(A) is likely to cause serious harm to
himself;

(B) is likely to cause serious harm to
others;  or

(C) is:

(I) suffering severe and abnormal
mental, emotional, or physical distress;

(ii) experiencing substantial mental
or physical deterioration of the proposed patient=s ability to function independently,
which is exhibited by the proposed patient=s inability, except for reasons of
indigence, to provide for the proposed patient=s basic needs, including food,
clothing, health, or safety;  and

(iii) unable to make a rational and
informed decision as to whether or not to submit to treatment.

 

Tex. Health & Safety Code Ann. ' 574.034(a) (Vernon 2003).  The trial court found appellant was mentally
ill as required by subsection 574.034(a)(1), and also found the existence of
all three conditions under subsection 574.034(a)(2).  Appellant challenges only the sufficiency of
the evidence supporting the findings under subsection (a)(2).








The clear and convincing standard is the degree of proof
that will produce in the mind of the trier of fact Aa firm belief or conviction@ as to the truth of the
allegations sought to be proved.  See
State v. Addington, 588 S.W.2d 569, 570 (Tex.
1979).  In a proceeding for temporary
inpatient mental health services, the evidence, to be clear and convincing,
must include expert testimony and, unless waived, evidence of a recent overt
act or a continuing pattern of behavior that tends to confirm (1) the
likelihood of serious harm to the proposed patient or others, or (2) the
proposed patient=s distress and deterioration of
her ability to function.  Tex. Health & Safety Code Ann. ' 574.034(d) (Vernon 2003).

When reviewing the legal sufficiency of evidence to support a
finding that the United States Constitution requires the State to prove by
clear and convincing evidence, we must look at all the evidence in the light most favorable
to the finding to determine whether a reasonable trier
of fact could have formed a firm belief or conviction that the alleged fact is
true.  See In re J.F.C., 96 S.W.3d
256, 266 (Tex. 2002).[5]  In doing so, we must assume the factfinder resolved disputed facts in favor of its finding
if a reasonable factfinder could do so.  Id. 
The reviewing court should disregard all evidence a reasonable factfinder could have disbelieved or found to have been
incredible.  Id.  This last caution, however, does not mean we
must disregard all evidence that does not support the finding; disregarding
undisputed facts that do not support the finding could skew the analysis of
whether there is clear and convincing evidence. 
Id.  When conducting a
factual sufficiency review, we review all the evidence to determine whether it
was sufficient to produce a firm belief or conviction in the minds of the factfinder of the allegations pleaded.  See G.H. v. State, 96 S.W.3d 629, 633
(Tex. App.CHouston [1st Dist.] 2002, no
pet.); see also In re C.H., 89 S.W.3d 17, 18B19 (Tex. 2002) (stating same in
context of parental rights termination case).

Analysis: Evidence Supporting Commitment Order








Although the trial court needed to find only one of the
statutory factors, the trial court in the present case found all three:  (1) appellant is likely to cause serious harm
to herself, (2) is likely to cause serious harm to others, and (3) is suffering
severe and abnormal mental, emotional, or physical distress;  experiencing substantial mental or physical
deterioration of her ability to function independently (as shown by her
inability, except for reasons of indigence, to provide her basic needs,
including food, clothing, health, or safety); and is unable to make a rational
and informed decision about whether to submit to treatment.  See Tex.
Health & Safety Code Ann. ' 574.034(a)(2).  Accordingly we review the record to determine
whether there was sufficient evidence to support any one of the three.  See In re R.M., 90 S.W.3d 909, 912
(Tex. App.CSan Antonio 2002, no pet.)
(terminating the analysis after finding evidence sufficient to satisfy one of
the subsections)








As set forth above, the State presented expert evidence
appellant was delusional, had disorganized thought patterns, and suffered from
bipolar disorder in manic state with psychotic features.  Expert diagnosis alone, however, is not
sufficient to confine a patient for compulsory treatment.  In re J.S.C., 812 S.W.2d 92, 95 (Tex.
App.CSan Antonio 1991, no
writ).  Instead, the expert opinion must
be supported by a factual basis.  Id.  Additionally, evidence that merely reflects a
patient=s mental illness and need for
hospitalization is not enough to meet the State=s burden of proof.  See, e.g., K.T. v. State, 68
S.W.3d 887, 893B94 (Tex. App.CHouston [1st Dist.] 2002, no pet.) (holding evidence legally
insufficient despite testimony appellant had delusions she was pregnant, had
sutures in her vagina, and staff was putting poison or medication in her food,
and testimony appellant refused to leave the examining room, refused to eat,
was verbally abusive, and attempted to escape); 
D.J. v. State, 59 S.W.3d 352, 357 (Tex. App.CDallas 2001, no pet.) (holding
evidence of patient=s psychotic behavior, delusions
she had undergone surgery by satellite and had electronics implanted in her not
sufficient to meet required statutory burden); Broussard v. State, 827
S.W.2d 619, 622B23 (Tex. App.CCorpus Christi 1992, no writ)
(reversing commitment order on no evidence challenge despite evidence that
patient had delusions, had been previously hospitalized for her mental illness,
and was described as hostile and provocative). 
Cf.  Mezick
v. State, 920 S.W.2d 427, 430 (Tex. App.CHouston [1st Dist.] 1996, no
writ) (holding evidence sufficient when State established patient had history
of threatening suicide, refused medication, and lost 30 pounds in three
months); L.S. v. State, 867 S.W.2d 838, 842B43 (Tex. App.CAustin 1993, no writ)
(affirming commitment for patient when evidence showed that patient
deliberately gained 10 pounds in one day by drinking excessive water, was
attacked by another patient for being intrusive, and habitually walked into
traffic without looking).

Here, the State presented evidence appellant engaged in
verbal altercations with others and knocked a door off of its hinges while
locked in a seclusion room.  These two
overt acts, however, do not tend to confirm appellant will cause Aserious harm@ to herself or others.  See Tex.
Health & Safety Code Ann. ' 574.034(a)(2)(A),(B), (d)(1); see
also In re K.D.C., 78 S.W.3d 543, 550B51 (Tex. App.CAmarillo 2002, no pet.) (holding no overt act or pattern to
support (2)(A), (B),or (C) despite evidence appellant walked long distances to
other cities; was picked up by police; and, when admitted to the hospital;
exhibited rapid, pressured speech and religious ideations, and had previously
been in another hospital for unknown reasons); In re P.W., 801 S.W.2d 1,
3 (Tex. AppCFort Worth 1990, writ denied)
(reversing and vacating commitment order despite evidence appellant  believed everyone was an agent for her
ex-husband and he was tapping her phone, she called her cousin asking the best
place to hold a pistol to kill herself without causing a lot of pain, she broke
her car window with a steel bar, burned clothes and picture frames, and
attempted to throw away valuable items). 








There was also no evidence of a recent overt act or a
continuing pattern of behavior tending to confirm a substantial deterioration
of appellant=s ability to function independently
as exhibited by an inability to provide for her own basic needs, including food
clothing, health, or safety.  See Tex. Health & Safety Code Ann. ' 574.034(a)(2)(C)(ii),
(d).  Although Bryan testified he
believes appellant is Adisorganized, to the point
where I don=t think she would necessarily
know when she=s hungry she has to go to the
kitchen and . . . pop something in the microwave,@ he provided no factual basis
for this opinion.  Instead, the evidence
shows only that appellant suffers from obesity and was hypoglycemic when
admitted to the emergency room.  Although
one medical report indicates appellant said she did not need her medications
because she was Asane,@ there is no evidence she was
refusing necessary medication.  Cf. In
re G.H., 94 S.W.3d 115B16 (Tex. App.CHouston [14th Dist.] 2002, no
pet.) (divided panel holding evidence legally and factually sufficient to
establish elements of criterion C under section 574.034(a)(2) when there
purportedly was evidence appellant refused any medication to treat her
condition).  Similarly, Bryan=s testimony appellant would
relapse if she was discharged from the hospital was not sufficient to satisfy
the evidentiary burden of a recent overt act or a continuing pattern of
behavior that tends to confirm Athe proposed patient=s distress and the
deterioration of the proposed patient=s ability to function.@  See Broussard, 827 S.W.2d at 620, 622
(holding evidence of six or seven prior hospitalizations, psychotic and hostile
behavior, and repeated refusals to take medication insufficient).

We hold the evidence was legally insufficient to support the
trial court=s findings under Texas Health
and Safety Code section 574.034(a)(2)(A),(B), or (C).

Analysis: The Order to Administer Psychoative
Medication

Appellant also argues the trial court erred in entering the
Order to Administer Psychoactive Medication because the evidence at trial was
legally  insufficient to support that
order.  A trial court may issue an order
authorizing the administration of psychotic medications only if the proposed
patient is under an order for involuntary mental health services.  Tex.
Health & Safety Code Ann. ' 574.106(a)(1) (Vernon
2003).  Therefore, because we reverse the
trial court=s commitment, we must also
reverse its order to administer psychotic medications.  See K.T., 68 S.W.3d at 894.

CONCLUSION 








We are reluctant to deny court-ordered treatment for anyone
who is ill.  However, within the fifteen
pages of testimony and the exhibits before us, we do not find the State proved
its case by clear and convincing evidence as it is required to do.  Accordingly, we sustain appellant=s issue one, reverse the orders
of the probate court, and render judgment denying the applications (1) for
court ordered mental health services and (2) to administer psychoactive
medications.  Having sustained appellant=s issue one, we need not
address issue two.

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed December 23, 2003.

Panel
consists of Chief Justice Hedges and Justices Anderson and Seymore.

 

 

 

 

 











[1]    Bryan
testified that the last time appellant was discharged from the hospital she was
able to have a relatively normal conversation and talk about her medications,
but she was back in two days, having deteriorated to the point that she was
delusional and disorganized.





[2]    Bryan
testified that prior to appellant=s
hospital commitment, an ACT Team monitored her at her apartment to no avail,
and that he believes that she is so delusional she would not know what to do
when she is hungry.





[3]    The trial
court=s written order sets forth all three statutory grounds
for commitment.  In its ruling from the
bench, the court set forth only harm to self and others.





[4]  Although
appellant has begun and may already be released from her temporary commitment,
her legal and factual sufficiency challenges are not moot.  See Johnstone v.
State, 22 S.W.3d 408, 409 n. 1 (Tex. 2000) (per curiam).






[5]    The United
States Constitution requires that the findings necessary to support involuntary
commitment for an indefinite period be made by clear and convincing evidence. Addington v. Texas, 441 U.S. 418, 433, 99 S.
Ct. 1804, 1813 (1979). The burden of proof required by due process is less
clear when the commitment is for a definite period, but the reasoning in Addington suggests the clear and convincing standard
of proof is constitutionally required in all involuntary commitments extending
beyond a short observational period.  See
Addington, 441 U.S. 425B33, 99 S. Ct. 1809B13.