NO. 12-04-00155-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


§APPEAL FROM THE 

THE STATE OF TEXAS FOR THE
BEST INTEREST                                              §     COUNTY COURT AT LAW OF
AND PROTECTION OF F.F.
 
§CHEROKEE COUNTY





MEMORANDUM OPINION
            Appellant F.F. appeals from an order of commitment for temporary inpatient mental health
services. After a hearing without a jury, the trial court ordered F.F. committed to Rusk State
Hospital for a period not to exceed ninety days. In five issues, F.F. challenges the legal and factual
sufficiency of the evidence and also asserts federal and state due process and equal protection
violations. We reverse and render.

Background
            On April 19, 2004, an application for court-ordered temporary mental health services was
filed requesting the court commit F.F. to Rusk State Hospital (the “Hospital”) for a period not to
exceed ninety days. The application was supported by two physician’s certificates of medical
examination for mental illness. 
            One of the physician’s certificates was prepared by a Dr. Cuellar who examined F.F. on
April 16, 2004. In Dr. Cuellar’s opinion, F.F. suffered from schizoaffective disorder; was likely to
cause serious harm to others and was suffering severe and abnormal mental, emotional, or physical
distress; was experiencing substantial mental or physical deterioration of her ability to function
independently as exhibited by her inability, for reasons other than indigence, to provide for her basic
needs, including food, clothing, health, or safety; and was unable to make a rational and informed
decision about whether to submit to treatment. As the basis for his opinion, the doctor stated that
F.F. had threatened family members, was hallucinating, and was out of touch with reality. He further
noted that on the date of the examination, F.F. “talked nonsense” and was “giggling to herself.”
            The second certificate was completed by Dr. Charles Plyler. He examined F.F. on April 23,
2004 and concurred in Dr. Cuellar’s diagnosis. Dr. Plyler concluded that F.F. was likely to cause
serious harm to herself or others. As the basis for his opinion, Dr. Plyler cited F.F.’s threats against
family members, her “irrational verbalizations,” and her conversations with “invisible entities.”
            On April 27, 2004, a hearing without a jury was conducted on the application. At the
conclusion of the hearing, the court granted the application for temporary inpatient mental health
services. The court also signed an order including findings that F.F. was mentally ill and that as a
result of that mental illness, F.F. met at least one of the following specified additional criteria: 
 
______is likely to cause serious to himself/herself; or 
              ______  is likely to cause serious harm to others; or 
              ______  is :
______(i) suffering severe and abnormal mental, emotional, or physical distress; 
______(ii) experiencing substantial mental or physical deterioration of the proposed patient’s
inability to function independently, which is exhibited by the proposed patient’s inability,
except for reasons of indigence, to provide for the proposed patient’s basic needs, including
food, clothing, health, and safety; and is unable to make a rational and informed decision as
to whether or not to submit to treatment.
 
In the order, an “X” appears in the blank preceding each of the additional criteria.

Sufficiency of the Evidence
            In her first issue, F.F. contends that the evidence is legally and factually insufficient to
support the commitment order. F.F. does not challenge the trial court’s finding that she was mentally
ill. She contends that the State did not prove an overt act or continuing pattern of behavior as
required by Section 574.034 of the Texas Health and Safety Code. Therefore, F.F. concludes, the
State’s evidence amounts only to a showing that she is mentally ill, which is insufficient to support
the trial court’s order.



Standard of Review
            In a legal sufficiency review where the burden of proof is clear and convincing evidence, we
must look at all the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its findings were true. In
re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed
facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a
reasonable fact finder could have disbelieved or found incredible. Id. This does not mean that we
are required to ignore all evidence not supporting the finding because that might bias a clear and
convincing analysis. Id.
            The appropriate standard for reviewing a factual sufficiency challenge is whether the
evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth
of the petitioner’s allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). In determining whether
the fact finder has met this standard, we consider all the evidence in the record, both that in support
of and contrary to the trial court’s findings. Id. at 27-29. Further, we must consider whether
disputed evidence is such that a reasonable fact finder could not have reconciled that disputed
evidence in favor of its finding. J.F.C., 96 S.W.3d at 266. If the disputed evidence is so significant
that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient. Id.
Applicable Law
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness, she is likely to cause serious
harm to herself; is likely to cause serious harm to others; or is (i) suffering severe and abnormal
mental, emotional, or physical distress; (ii) experiencing substantial mental or physical deterioration
of her ability to function independently, which is exhibited by her inability, except for reasons of
indigence, to provide for her basic needs, including food, clothing, health, or safety; and (iii) unable
to make a rational and informed decision as to whether or not to submit to treatment. Tex.
Health & Safety Code Ann. § 574.034(a) (Vernon 2003). 
            To be clear and convincing under this statute, the evidence must include expert testimony
and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to
confirm either the likelihood of serious harm to the proposed patient or others or the proposed
patient’s distress and the deterioration of her ability to function. Tex. Health & Safety Code
Ann. § 574.034(d) (Vernon 2003). Clear and convincing evidence means the measure or degree of
proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established. State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979). 
While the State’s proof must weigh heavier than merely the greater weight of the credible evidence,
there is no requirement that the evidence be unequivocal or undisputed. Id. The statutory
requirements for an involuntary commitment are strict because it is a drastic measure. In re C.O.,
65 S.W.3d 175, 182 (Tex. App.–Tyler 2001, no pet.).
            Evidence that merely reflects a patient’s mental illness and need for hospitalization is not
sufficient to meet the State’s burden under section 574.034. See, e.g., In re G.S.F., No. 12-03-00061-CV, 2003 WL 22047990, at *4 (Tex. App.–Tyler Aug. 29, 2003, no pet.); K.T. v. State, 68
S.W.3d 887, 892 (Tex. App.–Houston [1st Dist.] 2002, no pet.). Additionally, an expert diagnosis
of mental illness, standing alone, is not sufficient to confine a patient for treatment. G.S.F., 2003
WL 22047990, at *4; In re G.H., 96 S.W.3d 629, 634 (Tex. App.–Houston [1st Dist.] 2002, no pet.). 
The expert opinion and recommendations must be supported by a showing of the factual bases on
which the opinion is based. G.S.F., 2003 WL 22047990, at *4; In re K.D.C., 78 S.W.3d 543, 547
(Tex. App.–Amarillo 2002, no pet.). In other words, the expert should describe the specific
behaviors on which the opinion is based. G.S.F., 2003 WL 22047990, at *4. A threat of harm to
the patient or others must be substantial and based on actual dangerous behavior manifested by some
overt act or threats in the recent past. K.D.C., 78 S.W.3d at 547.
            As we have previously noted, F.F. does not challenge the trial court’s finding that she was
mentally ill. Instead, she asserts that the State did not prove a recent overt act or a continuing pattern
of behavior as required by section 574.034(d). To support an involuntary commitment order, the
trial court must find that the proposed patient is mentally ill and must also find the existence of at
least one of the additional criteria set out in section 574.034(a). See In re R.M., 90 S.W.3d 909, 912
(Tex. App.–San Antonio 2002, no pet.). The order in the instant case does not specify which of the
additional statutory criteria F.F. met, but includes a finding that F.F. met at least one of the additional
criteria. Accordingly, we review the record to determine whether there was sufficient evidence to
support a finding that F.F. met any one of the three additional criteria.
The Evidence
            The record in this case includes the two physician’s statements that were attached to the
application for court-ordered temporary mental health services. Although each certificate contains
a statement that F.F. had threatened family members, neither doctor provides facts relating to the
nature of the threats, the circumstances under which the alleged threats were made, or the identity
of any family member who was threatened. Dr. Cuellar noted that F.F. “talked nonsense” and
giggled to herself. Dr. Plyler observed “irrational verbalizations” and conversations with “invisible
entities.”
            At the hearing, the State presented the testimony of Dr. Vasantha Orocofsky, F.F.’s treating
physician. Dr. Orocofsky testified that she reviewed the two physician’s certificates prior to her
testimony and agreed that F.F. suffered from schizoaffective disorder. When asked whether she
agreed that F.F. is likely to cause serious harm to herself, Dr. Orocofsky answered, “Not at this time,
but to others maybe.” When asked about the basis for her opinion, she stated that F.F. had scratched
one of the staff and “they had to put her in personal restraints.” In addition, F.F. threatened staff and
peers on April 25 and needed PRN medication. 
            On cross-examination, Dr. Orocofsky testified that F.F. can eat, dress herself, take care of
personal hygiene without assistance or prompting, and take care of her personal safety with
supervision. The doctor expressed concern about the effect of F.F.’s mental status on her ability to
take care of her personal safety without assistance. However, she admitted that F.F. would get out
of a burning house, but stated, “I don’t know what she would do at that point.” She also stated that
F.F. would “maybe defend herself” instead of leave if people were threatening to attack her. 
            According to Dr. Orocofsky, F.F. refused medication initially, but later relented and signed
a written consent. She also testified that on the morning of the hearing, F.F. got “quite agitated” and
“almost got in my face.” She did not require personal restraints, but was still irritable. The doctor
described F.F. as dangerous and said that she cannot live safely in freedom, even with the help of
family members or friends. When asked about her testimony that F.F. had “scratched staff,” she
replied that she was not aware of the circumstances surrounding that incident or the incident in
which F.F. was alleged to have threatened staff and peers. She also admitted that neither incident
was documented in F.F.’s records. When asked whether she knew if F.F. physically assaulted
anyone, Dr. Orocofsky responded that “[t]hey said she hit and scratched the staff,” but that F.F. was
not her patient at the time. She admitted, however, that F.F. could have been defending herself in
these two situations. On redirect examination, Dr. Orocofsky testified that she believed it was likely
that F.F.’s behavior would incite others to harm her.
            F.F. testified that she had been arrested and taken to a facility called Spindletop on at least
three occasions, but did not state the reasons for the arrests. She did not recall scratching a staff
member or threatening staff members or peers. She related an incident in which she was dragged
off a couch by a “tech,” but stated that her response was to call Client’s Rights in Beaumont. She
testified that she would go to her mother’s home if she were released and that her brother lived about
ten blocks from her mother. F.F. said that she had no problem with medication unless it affected her
physically. She stopped taking a prior medication because of the side effects. When she and her
mother have lived together in the past, her mother did the shopping, and F.F. did the cooking. She
denied having any current intent to harm herself or others and asked that the court release her.
Legal Sufficiency
            Although both Dr. Cuellar and Dr. Plyler noted that F.F. had threatened family members,
neither the nature of the alleged threats nor the identity of any threatened family member can be
determined from the record. Dr. Orocofsky was not present during either incident that allegedly
occurred at the Hospital and therefore was unable to relate the details of either incident. She testified
that on another recent occasion, F.F. “got in her face” and that F.F. remained irritable as a result of
the incident. However, she did not relate any acts by F.F. during the incident that suggested F.F. was
dangerous. Moreover, none of the experts explained how the alleged acts they cited indicated
probable future dangerous behavior. Consequently, these references to F.F.’s conduct do not provide
sufficient factual support for either the expert opinions or the trial court’s finding that F.F. met at
least one of the three additional statutory criteria. Further, “talk[ing] nonsense,” “irrational
verbalizations,” “giggling to herself,” conversations with “invisible entities” and other similar
behavior merely reflect F.F.’s mental illness and need for hospitalization, but are insufficient to meet
the State’s burden to establish one of the additional criteria by clear and convincing evidence. See
M.S. v. State, 137 S.W.3d 131, 136 (Tex. App.–Houston [1st Dist.] 2004, no pet.). 
            Based upon our review of the record, we hold that the trial court could not have properly
made the findings required by section 574.034(a) by clear and convincing evidence because there
was no evidence of a recent overt act or continuing pattern of behavior that tends to confirm the
likelihood of serious harm to F.F. or others or a substantial deterioration of F.F.’s ability to function
independently to provide for her basic needs. Accordingly, we sustain F.F.’s first issue insofar as
it pertains to the legal sufficiency of the evidence. Because we have sustained F.F.’s legal
sufficiency issue, we need not review the factual sufficiency of the evidence or address F.F.’s issues
two through five asserting due process and equal protection violations.

            Disposition
            Having held that the evidence is legally insufficient to support the trial court’s order of
commitment for temporary mental health services, we reverse the trial court’s order and render
judgment denying the State’s application for court-ordered temporary mental health services. 
 
                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice


Opinion delivered October 29, 2004.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.






(PUBLISH)