

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-14-00479-CV & 04-14-00480-CV

The **STATE** of Texas for the Best Interest and Protection of J.B., a Mentally Ill Person

From the Probate Court No. 1, Bexar County, Texas
Trial Court Nos. 2014-MH-2027 & 2014-MH-2140
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Jason Pulliam, Justice

Delivered and Filed:  March 25, 2015

AFFIRMED

In these accelerated appeals, Appellant J.B. challenges the probate court's orders committing him for temporary inpatient mental health services and compelling psychoactive medication. J.B. argues the evidence is legally and factually insufficient to support either order. Having reviewed the record, we conclude the evidence is both legally and factually sufficient for the trial court to have formed a firm belief or conviction in the truth of its findings supporting the orders. We affirm the trial court's orders.

## BACKGROUND

J.B. is a middle-aged male diagnosed with bipolar 1 disorder with psychotic features and alcohol use disorder. After proper notice, the trial court held a hearing. J.B.'s treating physician testified to J.B.'s diagnosis and his behaviors. A licensed master social worker caring for J.B. also

testified about J.B.'s behaviors. When J.B. testified, he disputed the diagnosis and justified or denied the allegedly problematic behaviors.

After hearing the evidence, the trial court found J.B. was mentally ill and likely to cause serious harm to others, including members of J.B.'s family. The court ordered temporary commitment for mental health services including psychoactive medication. J.B. appeals both orders.

### STANDARD OF REVIEW

A court may order temporary mental health services if the fact-finder finds by clear and convincing evidence that the proposed patient meets certain conditions. TEX. HEALTH & SAFETY CODE ANN. § 574.034 (West Supp. 2014); *State v. K.E.W.*, 315 S.W.3d 16, 18–19 (Tex. 2010); *In re M.M.*, 184 S.W.3d 416, 417 (Tex. App.—Dallas 2006, no pet.). If the fact-finder makes such findings, the proposed patient may challenge the legal and factual sufficiency of the findings. *See K.E.W.*, 315 S.W.3d at 20 (legal sufficiency); *In re M.M.*, 184 S.W.3d at 417–18 (both).

### A. Legal Sufficiency

"In evaluating evidence for legal sufficiency under a clear and convincing standard, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true." *K.E.W.*, 315 S.W.3d at 20 (citing *In re. J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)); *see City of Keller v. Wilson*, 168 S.W.3d 802, 817, 827 (Tex. 2005). We must "resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so." *K.E.W.*, 315 S.W.3d at 20; *accord City of Keller*, 168 S.W.3d at 817.

**B.    Factual Sufficiency**

For a clear and convincing evidence standard of proof, we review the factual sufficiency of the evidence by giving "due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266 (relying on *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re C.E.*, 100 S.W.3d 368, 370 (Tex. App.—San Antonio 2002, no pet.). We may not substitute our judgment for that of the fact-finder because the fact-finder "[is] the sole judge[] of the credibility of the witnesses and the weight to give their testimony." *City of Keller*, 168 S.W.3d at 819; *accord Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 83 (Tex. App.—San Antonio 2011, no pet.). The evidence is factually sufficient if "'a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *In re J.F.C.*, 96 S.W.3d at 266 (quoting *In re C.H.*, 89 S.W.3d at 25); *see also In re M.M.*, 184 S.W.3d at 418.

### ORDER FOR TEMPORARY INPATIENT MENTAL HEALTH SERVICE

A trial court may order a proposed patient to receive temporary inpatient mental health services under the following conditions.

> (a)    The judge may order a proposed patient to receive court-ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that:
> (1)    the proposed patient is mentally ill; and
> (2)    as a result of that mental illness the proposed patient:
> (A)    is likely to cause serious harm to himself; [or]
> (B)    is likely to cause serious harm to others . . . .

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a); *accord K.E.W.*, 315 S.W.3d at 18; *In re R.M.*, 90 S.W.3d 909, 910 (Tex. App.—San Antonio 2002, no pet.).

Here, the probate court found J.B. to be mentally ill and likely to cause serious harm to others. We address each element in turn.

**A.      Mentally Ill Element**

At the temporary commitment hearing, the court heard testimony from several witnesses including Dr. Laura Sidari, J.B.'s attending physician, and from J.B.

*1.      Dr. Laura Sidari*

Dr. Sidari testified to the following facts.[1] She is a medical doctor, is licensed to practice medicine in Virginia, and is a physician in training for Texas licensure. She is currently practicing under the supervision of the attending staff psychiatrist at University Hospital, and she is the treating physician for J.B. She has seen J.B. exhibit, inter alia, extensive grandiose delusions, acting on his delusional beliefs, and an inability "to stop himself from being very confrontational with [other] patients." She diagnosed J.B. as mentally ill with bipolar 1 disorder with psychotic features and alcohol use disorder.

*2.      J.B.*

J.B. testified to the following facts. He began his career as a mental health worker in the San Marcos Treatment Center. He received a bachelor's degree from Southwest Texas State University, and completed some post-graduate studies in human resources and psychology at the University of Texas. He had been previously certified as a Licensed Professional Counselor, but he let his license lapse more than ten years ago. He does not believe he has bipolar disorder.

*3.      Analysis*

Dr. Sidari testified as an expert witness; she described her medical training and experience diagnosing and treating mental illness. She was J.B.'s treating physician. She testified J.B. was mentally ill, and she testified to specific instances of J.B.'s behaviors supporting her diagnosis and opinions. *Cf. In re Breeden*, 4 S.W.3d 782, 784 (Tex. App.—San Antonio 1999, no pet.) (noting

---

[1] J.B. stipulated to Dr. Sidari's expertise as an expert witness in his case.

"[a] bald diagnosis alone is insufficient to support commitment" and the expert's opinion "must be supported by a factual basis"). Dr. Peter Thompson, the attending staff psychiatrist and J.B.'s previous treating physician, also testified to specific instances of J.B.'s behaviors indicating he is mentally ill. The trial court was free to believe Dr. Sidari's and Dr. Thompson's expert opinions, supported by factual bases, and disregard J.B.'s lay opinions. *See K.E.W.*, 315 S.W.3d at 20; *City of Keller*, 168 S.W.3d at 817.

Having reviewed the evidence, we conclude the trial court could have formed a firm belief or conviction that its finding that J.B. was mentally ill is true. *See K.E.W.*, 315 S.W.3d at 20; *City of Keller*, 168 S.W.3d at 817. Thus, the evidence is legally and factually sufficient to support the trial court's finding that J.B. is mentally ill. *See K.E.W.*, 315 S.W.3d at 20; *City of Keller*, 168 S.W.3d at 817.

## B. Harm to Others Element

In addition to finding J.B. is mentally ill, the probate court found J.B. "is likely to cause serious harm to others" under a clear and convincing evidentiary standard. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a), (d); *K.E.W.*, 315 S.W.3d at 20–21. "To be clear and convincing . . . , the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm . . . the likelihood of serious harm to the proposed patient or others." TEX. HEALTH & SAFETY CODE ANN. § 574.034(d); *K.E.W.*, 315 S.W.3d at 20–21. We review the evidence pertaining to the serious harm to others finding.

### 1. Dr. Laura Sidari

Dr. Sidari testified that J.B. "was brought to the hospital because of concerns that he may be overmedicating his father, . . . giving him pain medications that he did not need. He also reportedly disposed of the family dog, and there's concerns that he may have done that inappropriately." She stated he was agitated to the point of requiring medications, he demonstrated

impulsivity in his interactions with hospital staff and other patients, including intrusiveness that placed other patients in danger. She noted his arguments with other patients and staff were increasing, and J.B. was "unable to stop himself from being very confrontational with [another] patient." She noted he cannot differentiate between a safe situation and a harmful one, and could turn a safe situation into a dangerous one. The hospital staff moved him to a unit with fewer beds and more direct supervision because of their concerns about his aggressiveness or potential aggressiveness with others.

Dr. Sidari further testified that J.B. has extensive grandiose delusions, and she expressed concern that he is acting on his delusional beliefs. He "believes that he is a famous entity who is a singer, a performer, a chef, a radio show host, a TV—potential TV star, an owner of multiple restaurants or somebody who's also sold multiple restaurants, living in a large home and who's been in multiple magazine articles." He also has delusions that he has extensive medical training, and he has held himself out as a physician or a trained medical professional. When others challenge his beliefs about his qualifications, he becomes angry.

Dr. Sidari testified that because of his mental illness, J.B. is likely to cause serious harm to others which may also result in harm to himself.

### 2. *Shevonne Kiernan, LMSW*

Shevonne Kiernan is a Licensed Master Social Worker at the hospital where J.B. was being treated. She testified she did not witness J.B. giving inappropriate advice to patients. She observed J.B. become highly agitated during a telephone conversation with his sister; he was yelling at her over the phone because he was angry with her for having him held involuntarily at the hospital.

### 3. *J.B.*

J.B. testified on his own behalf. He admitted giving his father prescription medication not prescribed for his father, but defended his actions as appropriate and beneficial. He stated his

father was "very agitated, couldn't pay attention very well," so he gave his father a pain medication that had been prescribed for J.B. J.B. defended his actions on several bases. He had previously taken the medication, was familiar with its effects, and he felt it would help his father relax and sleep. He testified he was "aware of the pharmacology of that drug," before he acted he checked with his sister who is a Registered Nurse, and then he gave his father some medication prescribed for J.B.

J.B. testified he had a bachelor's degree, some post-graduate studies in psychology, had been a Licensed Professional Counselor, and had experience in the medical field. J.B. denied holding himself out as a doctor, but admitted "Doctor John . . . is a nickname because of my unbelievable knowledge of the medical field." He asserted he had been chosen by Laurel Ridge Hospital to be a mental health specialist and assistant unit director.

J.B. also denied being agitated or inappropriate with other patients. He explained why he had become agitated with a particular patient and defended his conduct. When asked why he was moved to a different unit, he insisted it was "sheer, absolute retaliatory punishment from the doctor."

### 4. Sufficient Evidence

The trial court found, inter alia, that J.B. was acting on his delusions, and J.B.'s overt acts, including medicating his father and "holding [himself] out as a physician or a person with extraordinary medical expertise," tended to confirm the likelihood of J.B. causing serious harm to others. The trial court specifically found several of J.B.'s assertions to be not credible, such as J.B.'s account that he was asked to be a founding staff member of Laurel Ridge Hospital years after his LPC license had expired.

Having reviewed the evidence, we conclude the trial court could have reasonably formed a firm belief or conviction that J.B.'s overt acts tended to confirm that J.B. was likely to cause

serious harm to others. *See K.E.W.*, 315 S.W.3d at 20 (citing *In re J.F.C.*, 96 S.W.3d at 266). Thus, the evidence was legally and factually sufficient to support the trial court's order for temporary inpatient mental health services.

We overrule J.B.'s first issue.

### ORDER COMPELLING PSYCHOACTIVE MEDICATION

A physician may obtain a court order to administer psychoactive medication to a patient despite the patient's refusal if the physician's application meets certain requirements. TEX. HEALTH & SAFETY CODE ANN. § 574.104(a) (West 2010); *K.E.W.*, 315 S.W.3d at 26. One of the requirements is that the patient be "under an order for inpatient mental health services under this chapter." TEX. HEALTH & SAFETY CODE ANN. § 574.104(a)(3); *K.E.W.*, 315 S.W.3d at 26; *see also* TEX. HEALTH & SAFETY CODE ANN. § 574.106.

Here, J.B. challenges the order authorizing psychoactive medication solely on the basis that the order for inpatient mental health services was invalid. Because we have concluded the evidence supporting the order for temporary inpatient mental health services was both legally and factually sufficient, we overrule J.B.'s second issue.

### CONCLUSION

Having reviewed the record, we conclude the evidence is legally and factually sufficient for the probate court to have found by clear and convincing evidence that J.B. was mentally ill and met the other statutory requirements for an order for temporary inpatient mental health services and an order compelling psychoactive medication. We affirm the trial court's orders.

Patricia O. Alvarez, Justice