**The STATE of Texas, Petitioner,**

v.

**Wyline Elizabeth LODGE, Respondent.**

**Lisa JONES, Petitioner,**

v.

**The STATE of Texas, Respondent.**

**Nos. B–9431, B–9615.**

Supreme Court of Texas.

Nov. 26, 1980.

Bill M. White, Dist. Atty., Bernie Martinez, Asst. Dist. Atty., San Antonio, for petitioner.

Ray Leach and Bill McKee, San Antonio, for respondent.

STEAKLEY, Justice.

These are companion cases. The question for decision is whether the mootness doctrine applies to appeals from involuntary commitments for Temporary Hospitalization in a mental hospital for a period not to exceed 90 days pursuant to the provisions of the Texas Mental Health Code, Art. 5547.[1] The Austin Court of Civil Appeals has ruled in *Jones v. State,* 599 S.W.2d 897, that an appeal from a temporary involuntary commitment became moot when the patient was discharged. The San Antonio Court of Civil Appeals in *Lodge v. State,* 597 S.W.2d 773, has ruled otherwise. The court in *Jones v. State,* expressly declined to follow

---

1. References are to Tex.Rev.Civ.Stat.Ann. (1980).

the holding in *Lodge v. State.*[2] We granted writ of error in both cases and now rule that the appeals from the orders of commitment were not precluded by the mootness doctrine.

Art. 5547–31. Application for temporary hospitalization, provides in part:

A sworn Application of Temporary Hospitalization of a proposed patient may be filed with the county court of the county in which the proposed patient resides or in which the proposed patient is found or in which the proposed patient is hospitalized by court order. *The Application* may be made by any adult person, or by the county judge, and shall state upon information and belief *that the proposed patient* is not charged with a criminal offense, that he *is mentally ill, and that for his own welfare and protection or the protection of others he requires observation and/or treatment in a mental hospital.* (Italics added).

Art. 5547–39a. Notice of Appeal and Art. 5547–39b. Transcript on Appeal, provide:

Art. 5547–39a.

The person ordered committed may appeal the Order of Temporary Hospitalization by filing written notice thereof with the County Court within five (5) days after the Order of Temporary Hospitalization is entered.

Art. 5547–39b.

When notice of appeal is filed, the clerk shall immediately send a certified transcript of the proceedings to the Court of Civil Appeals of the county.

Art. 5547–39d. Hearing of Appeals, provides:

. . . Such cases shall be advanced on the docket and given a preference setting over all other cases. The Courts of Civil Appeals may suspend all rules concerning the time for filing briefs and the docketing of cases.

Art. 5547–40. Prerequisite to Commitment, provides:

No person may be committed to a mental hospital for an indefinite period unless he has been under observation and/or treatment in a mental hospital for at least sixty (60) days pursuant to an Order of Temporary Hospitalization entered within the twelve (12) months immediately preceding the filing of the Petition or unless he has been under observation and/or treatment in a mental hospital under an Order entered pursuant to Section 5 of Article 46.02, Code of Criminal Procedure, 1965, for at least sixty (60) days within the twelve (12) months immediately preceding the date of the indefinite commitment hearing.

As seen in the provisions of these statutes, an application for temporary hospitalization must charge that the proposed patient is mentally ill, and that his own welfare and protection or the protection of others requires commitment to a mental hospital. It is further apparent from these statutory provisions that it was intended that one involuntarily committed to a mental hospital would have a viable appeal if he is temporarily confined in response to the application. This legislative purpose would be frustrated in most instances by the application of the mootness doctrine to orders for temporary commitment. A person involuntarily committed to a mental hospital for temporary hospitalization for a period not to exceed 90 days may be discharged at any time during the period of commitment; and in many if not most instances this, or even if the full 90 days is observed, will be at a time when an appeal from the order of commitment could not have been given appellate review and decision.

For all practical time frames, then, only orders for an indefinite commitment would afford persons an effective appeal. Under Art. 5547–40, however, an indefinite com-

---

**2.** It may also be noted that the Fort Worth Court of Civil Appeals in *Jones v. State,* 602 S.W.2d 132 (Tex.Civ.App.1980), embraced the reasoning in *Carrillo v. State,* 480 S.W.2d 612 (Tex.1972) and in *Lodge v. State, supra.* In so

doing, ne Fort Worth Court reexamined its previous ruling to the contrary in *Hollifield v. State,* 545 S.W.2d 267 (Tex.Civ.App.1976, no writ).

mitment may not be ordered unless the person has been under observation and/or treatment in a mental hospital for at least 60 days pursuant to an order of Temporary Hospitalization within the immediately preceding 12 months. Thus, the necessary predicate for an order of indefinite commitment, and hence the availability of an effective appeal, can always be defeated by discharge from the mental hospital within the first 60 days of the temporary confinement. And this would continue to be true if successive temporary commitments are ordered.

There are two recognized exceptions to application of the mootness doctrine. One is termed the "capable of repetition yet evading review" exception, see *Southern Pacific Terminal Company v. Interstate Commerce Commission*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); the other is termed the "collateral consequences" exception, see *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); cited in *Carrillo v. State*, 480 S.W.2d 612 (Tex. 1972). We rejected the mootness contention in *Carrillo* and wrote that a minor should have the right to clear himself by appeal; and that this right should not be removed because the sentence given is so short that it expires before appellate steps can be completed, or the probated sentence is lifted before such time. We recognized that stigma attached to an adjudication of juvenile delinquency and that such adjudication carried with it deleterious collateral effects and legal consequences. We emphasized that a juvenile would have no way to exonerate himself by appeal if it were made moot by the compulsory serving of a relatively short sentence. Cf. *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); *Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972).

We are mindful of the difference in the consequences of an adjudication of delinquency, as in *Carrillo*, as well as those in the context of the cases cited immediately above, and an involuntary commitment to and confinement in a mental hospital for care and treatment, as here. Each, however, is manifestly severe and prejudicially unfair if the commitment is one that would not stand upon review in an effective appeal. The United States Supreme Court emphasized in *Vitek v. Jones*, that the Court in *Humphrey v. Cady* wrote that for the ordinary citizen, commitment to a mental hospital produces "a massive curtailment of liberty;" and that in *Addington*, the Court wrote that it is indisputable that commitment to a mental hospital "can engender adverse social consequences to the individual" whether it is labeled a "stigma" or if it is called something else. Indeed, and as recognized in *Sibron v. New York*, the Court in *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), abandoned all inquiry into the actual evidence of specific collateral consequences and in effect presumed that they existed.

In the light of these considerations, we cannot justify the application of the mootness doctrine here, the practical result of which would deprive the persons adversely affected of a chance for redress. Nor can we perceive any public interest or policy that would be enhanced by mooting the appeals under review. Finally, we cannot agree that the reversal of the lower court judgment and dismissal of the cause as moot removes the collateral consequences of a commitment for mental health to the same extent as the reversal of the judgment after appellate review and the pronouncement in writing of the considerations impelling the decision favorable to the aggrieved party.

The judgment of the Court of Civil Appeals in Cause B–9431, *State v. Lodge*, is affirmed.

The judgment of the Court of Civil Appeals in Cause B–9615 is reversed and the cause is remanded to the Court of Civil Appeals for consideration of the appeal of Lisa Jones.

BARROW, J., dissents in an opinion in which GREENHILL, C. J., and McGEE, J., join.

RAY, J., not sitting.

BARROW, Justice, dissenting.

I respectfully dissent. I would hold that the discharge of the patients from the mental hospital as no longer requiring observation or treatment terminated the order for temporary hospitalization and caused the appeal to become moot. I therefore agree with the judgment of the Austin Court of Civil Appeals that the order for temporary hospitalization should be set aside and the cause dismissed.

The same question was presented to this Court by the application for writ of error in the case of *In re Ivey*, 534 S.W.2d 163 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.). The court of civil appeals, after full consideration of the question held that neither the "capable of repetition, yet evading review" exception nor the "collateral consequences doctrine" barred application of the mootness doctrine where the patient had been discharged from the hospital. The court said:

> "As stated above, upon determination that an appeal is moot the rule in this State is that the judgment of the lower court is reversed and the cause is dismissed. Such procedure quite as effectively erases the 'collateral consequences' of the judgment as would the reversal of the judgment upon the basis of procedural error . . . ."

This holding was necessarily approved by this Court by our refusal of the application for writ of error, no reversible error because the court of civil appeals did not consider the merits of the appeal. This holding has been followed in other cases. See *Winely v. State*, 556 S.W.2d 637 (Tex. Civ.App.—Austin 1977, no writ); *Hollifield v. State*, 545 S.W.2d 267 (Tex.Civ.App.— Fort Worth 1976, no writ).

The majority opinion here apparently rests upon the "collateral consequences doc-trine" since the holding largely relies upon *Carrillo v. State*, 480 S.W.2d 612 (Tex. 1972)[1]. The reliance upon *Carrillo* is not justified because of the significant statutory differences between an adjudication of delinquency and an order for temporary hospitalization. As pointed out in *Carrillo*, an adjudication of delinquency by statute carries with it certain deleterious collateral effects and legal consequences in addition to any stigma attached to being adjudged a juvenile delinquent. For example, the juvenile court is permitted to keep the records of conviction and permit other juvenile officers to inspect them. Also, the records of the Texas Youth Council may be used in setting punishment in a future criminal or juvenile case and, if the juvenile is later charged with a felony, his records may be exhibited to the press.

There would be no such collateral effects after the order for temporary hospitalization is set aside and the cause dismissed. After the order is set aside, it cannot form the basis for a subsequent application under Art. 5547–40[2] for an indefinite commitment to a mental hospital. The Code clearly requires that the prerequisite period of temporary commitment must be pursuant to a valid order for temporary hospitalization.

It is settled law that when this Court concludes that a case is moot, we set aside all orders entered in the cause by lower courts, including the original judgment, and dismiss the cause. *City of Corpus Christi v. Public Utility Commission*, 569 S.W.2d 494 (Tex.1978); *United Services Automobile Association v. Lederle*, 400 S.W.2d 749 (Tex. 1966); *Texas Foundries v. International Moulders & Foundry Workers' Union*, 151 Tex. 239, 248 S.W.2d 460 (1952). Thus, the order complained of here would be completely erased by a finding of mootness.

---

1. The majority also cites *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), and *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957) in support of application of the "collateral consequences doctrine." These cases are clearly distinguishable in that both were appeals from criminal convictions which by law have many deleterious collateral consequences after the sentence is completed. In addition, a constitutional question was presented in each of these cases.

2. All statutory references are to Texas Mental Health Code, Texas Revised Civil Statutes Annotated.

I am unwilling to say as a matter of law in today's society that there is a stigma attached to a person who is committed to a hospital for observation or treatment for a period not to exceed ninety days. We should recognize that last year more than 43 percent of the patients who were ordered committed sought such commitment voluntarily.[3] Assuming arguendo that a stigma does attach to a person temporarily committed for treatment, I fail to see how reversing the commitment order because of a procedural defect removes the stigma more effectively than setting aside the order and dismissing the cause. *See Employees Finance Company v. Lathram*, 369 S.W.2d 927 (Tex.1963).

It is suggested by the majority that to moot the cause after a patient has been discharged from the hospital because he/she no longer requires observation or treatment would effectively prevent an appeal from such an order. This is not so. The Legislature has recognized the need for an appeal and has provided for an expedited appeal. *See* Art. 5547–39a–d. The attorney for Mrs. Lodge fully utilized this expedited procedure and perfected her appeal to the court of civil appeals within eleven days. She was subsequently discharged from the hospital after being treated less than a month. Unfortunately, the court of civil appeals did not determine her appeal until some ten months later. There are other cases where the expedited appeal has been timely heard by the court of civil appeals. *See In re Mastin*, 521 S.W.2d 150 (Tex.Civ. App.—Dallas 1975, no writ); *Moss v. State*, 539 S.W.2d 936 (Tex.Civ.App.—Dallas 1976, no writ).

It is clear that the doctrine of "capable of repetition, yet evading review"[4] has no application here. No challenge to the constitutionality of the Code is presented by either of these appeals. The *Lodge* case was reversed for factual insufficiency and, at least in part, because the State failed to

show the qualifications of the purported expert witness. Despite this reversal, there is nothing in the Code to prevent a new application for temporary hospitalization being filed under Art. 5547–31 should she subsequently require treatment or observation in a mental hospital.

It is suggested that we should permit this appeal as a matter of public policy even if it is moot. We must recognize, however, that to pass upon a patient's points of error after her discharge from the terms of the order would constitute the rendition of an advisory opinion on abstract questions of law. Texas courts have repeatedly held that the judicial power in the Texas Constitution does not embrace the giving of advisory opinions. *Firemen's Ins. Co. of Newark, New Jersey, v. Burch*, 442 S.W.2d 331 (Tex. 1968); *United Services Life Insurance Company v. Delaney*, 396 S.W.2d 855 (Tex.1965).

I would affirm the judgment of the court of civil appeals in Cause No. B–9615, *Lisa Jones v. State of Texas*, 599 S.W.2d 897.

I would reverse the judgment of the court of civil appeals in No. B–9431, *The State of Texas v. Wyline Elizabeth Lodge*, 597 S.W.2d 773, set aside the trial court order of temporary hospitalization and dismiss the cause.

GREENHILL, C. J., and McGEE, J., join in this dissent.

---

3. Texas Department of Mental Health and Mental Retardation, Data Book 1979, Volume A.

4. *See Southern Pacific Terminal Company v. Interstate Commerce Commission and E. H. Young*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911).