In the Matter of K.P.H.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

                                         
NOS. 
2-05-430-CV

        2-05-431-CV

IN THE MATTER OF K.P.H. 

------------

FROM COUNTY COURT AT LAW NO. 2 OF WICHITA 
COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

K.P.H. appeals the trial court’s “Judgement—Temporary Mental Health” (judgment) temporarily committing him to a state hospital to receive mental health services and the trial court’s “Order to Authorize Psychoactive Medications” (order) authorizing the administration of psychoactive medication
.  In three issues, K.P.H. argues that 1) the 
trial court erred by rendering judgment that K.P.H. be committed for court-ordered temporary mental health services because the evidence is legally and factually insufficient to show a recent overt act or a continuing pattern of behavior to support the commitment, 2) the trial court therefore 
erred by ordering the administration of psychoactive medications because such an order must be based upon a valid order of commitment for mental health services, and 3) the trial court erred 
by finding and ordering that the administration of the antidepressant class of medications to K.P.H. is the proper course of treatment and in his best interest.  We affirm the trial court’s judgment and order.

On November 7, 2005, the State filed an application for court-ordered mental health services and a motion for order of protective custody of K.P.H. The trial court issued an order for protective custody on November 8, 2005. K.P.H. waived a probable cause hearing, and on November 10, 2005, the trial court entered an order that probable cause existed to believe that K.P.H. presented a “substantial risk of serious harm to self or others.”

At K.P.H.’s commitment hearing on November 23, 2005, 
Dr. Eileen Farber, M.D., testified that K.P.H. had Bipolar I Disorder, a recognized form of mental illness.  She testified that in his last treatment, he was very disorganized, rambling, paranoid, and delusional in his speech.  In addition, he had been engaged in high-risk behavior and stated that he was Kay Bailey Hutchinson’s nephew and Willie Nelson’s half-brother.  He stated that everybody was following him and that governmental agencies were following him because he won the lottery in New Orleans and because they wanted their half of the money.  He also stated that he was albino, although it appeared to Dr. Farber that he was not.  He stated that he had liver cancer, but nothing indicated that this was true.

Dr. Farber testified that K.P.H. was persecutory, grandiose, and somatic
 and that he looked calmer than the last time she saw him.  She stated that K.P.H. rode his bicycle into oncoming traffic and that he bought five new cars, writing hot checks for thirty thousand dollars.  She testified
 that he would present a risk of causing serious harm to himself and others if released.  She also testified that his estranged wife is afraid of him because he built shrines for her.  She testified that if not treated, K.P.H. would continue to suffer physical or emotional distress and that his paranoia and delusions might cause trouble with others and the criminal justice system.  She testified that he had no insight regarding his illness and that he lacked the capacity to decide whether to submit to treatment or administer medications.  She testified that he had been refusing medications but that medications are in his best interest. 
She proposed treating K.P.H. with antipsychotic medication and mood stabilizers.  She testified that he does not have the ability to care for himself outside of the facility.

K.P.H. also testified at the commitment hearing.  He stated that his wife had asked him to leave home because she wanted a divorce.
  
He testified that he has liver cancer, hepatitis C, cirrhosis, high blood pressure, and Graves disease.  He admitted to riding a bicycle into oncoming traffic one time, claiming that he was trying to get people to leave him alone.  He testified that when he stopped by a restaurant near his house, the Department of the Interior, the Department of the Navy, the Department of the Air Force, highway patrol, and Texas Rangers were all there eating, and he wanted them to leave him alone.  He denied building shrines to his wife, claiming that the objects at issue were just leftover trash, including underwear and broken ketchup bottles.  He claimed that he had won both the Texas and New Mexico lotteries and that those tickets were located in a safe deposit box in Paducah, Texas.  He testified several times that he had been married to his wife for twenty-four years, nine months, and nineteen days.

He also stated that he knows top-secret information and that his brother, who was in the Army in World War II, told him what went on in the “jungle that she tries to act like is a hospital.”  He claimed that he could not divulge that material or else he “would have to kill you.”  According to K.P.H., the people from whom he was trying to escape on the bicycle had followed him for over eight thousand miles to pick him up and bring him down here.  He stated that if he was released, he would go stay with his sister in Slaton, Texas.  He insisted 
that he has not refused to take medications, that he has “never stopped taking [them] since they were stolen,” and that he “[does not] miss a day unless [he does not] have the money to buy it or it’s taken away” from him.  K.P.H. said he would be willing to voluntarily take medications and do out-patient therapy if released.  He said there was no reason to have court-ordered medications.  
He also stated that he had never been in a mental institution.

In addition to hearing oral testimony, the court judicially noticed two Certificates of Medical Examination and an Alternative Treatment Recommendation document. 
 Dr. Tom Mareth, M.D., examined K.P.H. on November 7, 2005, and his Certificate’s affidavit stated that on or about November 7, 2005, K.P.H. drove his bicycle into traffic recklessly.  Dr. Hector Decena, M.D., examined K.P.H. on November 8, 2005, and his Certificate’s affidavit 
stated that on November 8, 2005, K.P.H. did “nothing significant[,] but prior to admission[,] [he] was walking in [a] heavy traffic street.”

The Alternative Treatment Recommendation form, filled out by Laurie Prickett, a crisis interventionist, noted that as a result of the shrines, K.P.H.’s wife had obtained a protective order against him.  It also noted that K.P.H. “[a]pproaches young female teenagers to spend time with him.”

At the close of the hearing, the court ordered K.P.H. to hospital commitment for a temporary period, not to exceed ninety days,
(footnote: 2) and the court noted that it “[would] authorize treatment as needed for the classes of  [medication].”

In K.P.H.’s first issue, he argues that the 
trial court erred by rendering judgment committing him to court-ordered temporary mental health services because the evidence is legally and factually insufficient to show a recent overt act or a continuing pattern of behavior to support the commitment.
  
Section 574.034(a) of the Texas Health and Safety Code provides that a judge may order a person to receive court-ordered temporary inpatient mental health services only if the judge finds by clear and convincing evidence that

(1) the proposed patient is mentally ill; and

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to himself;

(B) is likely to cause serious harm to others; or

(C) is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient’s ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.
(footnote: 3)

Clear and convincing evidence is “that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”
(footnote: 4)  To establish clear and convincing evidence supporting court-ordered mental health services, the State must produce expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either (1) the likelihood of serious harm to the proposed patient or others or (2) the proposed patient’s distress and the deterioration of ability to function.
(footnote: 5)  Evidence that reflects only on a patient’s mental illness and need of hospitalization 
is insufficient to satisfy the recent overt act or continuing pattern standard.
(footnote: 6) 
 
Considering the evidence set out above and applying the appropriate standards of review,
(footnote: 7) we hold that the evidence in this case is legally and factually sufficient to support the trial court’s findings.  K.P.H.’s riding his bicycle into traffic constitutes a recent overt act, which in connection with his other behavior, tends to confirm that he poses a safety risk to himself, as well as possibly to others.

K.P.H. claims that both Certificates of Medical Examination describing the bicycle incident were derived from a suicide assessment form filled out by Prickett, on November 6, 2005, and are inaccurate as to the date when K.P.H. was riding the bicycle.
  
However, the certificates themselves say that they are based on an evaluation and examination of K.P.H. that occurred on November 7 and 8, respectively.  Therefore, it appears that the doctors evaluated K.P.H. after he was detained and simply indicated the date of the incident as occurring “on or about” the date on which they evaluated him.  
Although the exact date of the bicycle incident is unclear by viewing the judicially noticed documents, it is clear that the incident occurred about two and a half weeks before the hearing and is thus a recent act.  We overrule K.P.H.’s first issue.

In his second issue, K.P.H. argues that the trial court 
erred by ordering the administration of psychoactive medications because such an order must be based upon a valid order to receive mental health services
.
(footnote: 8)  
Because we have held that the order of commitment for mental health services in K.P.H.’s case is valid, we overrule his second issue.

In his third issue, K.P.H. argues that the trial court erred 
by finding and ordering that the administration of the antidepressant class of medications to K.P.H. is the proper course of treatment and in his best interest
.  
Section 574.106(a-1) provides that the court may issue an order authorizing the administration of psychoactive medications 
only if the court finds by clear and convincing evidence after the hearing that, among other things, treatment with the proposed medication is in the best interest of the patient.
(footnote: 9) 
 
Subsection (b) provides that in determining whether treatment with the proposed medication is in the best interest of the patient, the court shall consider

(1) the patient’s expressed preferences regarding treatment with psychoactive medication;

(2) the patient’s religious beliefs;

(3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;

(4) the consequences to the patient if the psychoactive medication is not administered; 

(5) the prognosis for the patient if the patient is treated with psychoactive medication;

(6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication; and

(7) less intrusive treatments likely to secure the patient’s agreement to take the psychoactive medication.
(footnote: 10)

I
t is uncontested that Dr. Farber made no mention of antidepressants in her testimony at the hearing but instead suggested anti-psychotic medication, mood stabilizer, and “something for anxiety.”  Thus, K.P.H. argues that there is no evidence in the record that treatment with antidepressants is in his best interest.

In response, the State contends that Section 574.106(a-1) does not require evidence regarding medication to be testified to 
at 
the hearing, and, according to the statute’s language, the decision can be made from all the evidence, testimonial or not, 
after 
the hearing.  Dr. Decena, in his Application for Order to Authorize Psychoactice Medication, indicated that antidepressants (as well as antipsychotics, anxiolytics/sedatives/hypnotics, and mood stabilizers) would be a proper course of treatment and in the best interest of K.P.H.  A copy of this application was served on K.P.H., it was judicially noticed at the hearing, and the recommendation went unchallenged at the hearing.  The trial court’s order indicated that treatment with antidepressants, antipsychotics, anxiolitics/sedatives/hypnotics, and mood stabilizers is in K.P.H.’s best interest, and it specifically stated that the court relied on Dr. Decena’s recommendations in making its decision.  The court’s reasoning was justifiably based on this evidence.  Applying the appropriate standards of review,
(footnote: 11) we hold that the evidence is legally and factually sufficient to support a finding that antidepressants are in K.P.H.’s best interest.  We overrule K.P.H.’s third issue.

Having overruled all of K.P.H.’s issues, we affirm the trial court’s judgment and order.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, HOLMAN,  and GARDNER, JJ.

DELIVERED:  March 16, 2006

FOOTNOTES
1:
See
 Tex. R. App. P. 
47.4.

2:
We note that although the ninety-day period expired before we heard this appeal, the principle that appellate courts will not decide moot propositions does not apply to appeals from involuntary commitments for temporary hospitalization for a period not to exceed ninety days.  
In re R.S.C.
, 921 S.W.2d 506, 508 (Tex. App.—Fort Worth 1996, no writ) (citing 
State v. Lodge, 
608 S.W.2d 910, 912 (Tex. 1980); 
L.S. v. State
, 867 S.W.2d 838, 841 n.2 (Tex. App.—Austin 1993, no writ)).

3:
Tex. Health & Safety Code Ann. §
 574.034(a) (Vernon 2003).

4:
State v. Addington
, 588 S.W.2d 569, 570 (Tex. 1979).

5:
Tex. Health & Safety Code Ann. §
 574.034(d).

6:
See T.G. v. State
,
 
7 S.W.3d 248, 251-52 (Tex. App.—Dallas 1999, no pet.); 
In re P.W.
, 801 S.W.2d 1, 3 (Tex. App.—Fort Worth 1990, writ denied).

7:
Diamond Shamrock Ref. Co. v. Hall
, 168 S.W.3d 164, 170 (Tex. 2005); 
Sw. Bell Tel. Co. v. Garza
, 164 S.W.3d 607, 622, 625, 627 (Tex. 2004);
 In re C.H.
, 89 S.W.3d 17, 28 (Tex. 2002).

8:
See 
Tex. Health & Safety Code Ann. §
 574.106(a) (Vernon Supp. 2005).

9:
Id. 
§
 574.106(a-1).

10:
Id. 
§
 574.106(b).

11:
See Diamond Shamrock
, 168 S.W.3d at 170;
 Garza
, 164 S.W.3d at 622, 625, 627;
 In re C.H.
, 89 S.W.3d at 28.