COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                         NOS.
2-05-430-CV

       
2-05-431-CV

 

 

IN THE MATTER OF K.P.H.                                                                    

                                                                                                        

 

                                              ------------

 

          FROM COUNTY COURT AT
LAW NO. 2 OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








K.P.H. appeals the trial court=s AJudgementCTemporary
Mental Health@ (judgment) temporarily
committing him to a state hospital to receive mental health services and the
trial court=s AOrder to
Authorize Psychoactive Medications@ (order)
authorizing the administration of psychoactive medication.  In three issues, K.P.H. argues that 1) the
trial court erred by rendering judgment that K.P.H. be committed for
court-ordered temporary mental health services because the evidence is legally
and factually insufficient to show a recent overt act or a continuing pattern
of behavior to support the commitment, 2) the trial court therefore erred by
ordering the administration of psychoactive medications because such an order
must be based upon a valid order of commitment for mental health services, and
3) the trial court erred by finding and ordering that the administration of the
antidepressant class of medications to K.P.H. is the proper course of treatment
and in his best interest.  We affirm the
trial court=s judgment and order.

On November 7, 2005, the State filed an
application for court-ordered mental health services and a motion for order of
protective custody of K.P.H. The trial court issued an order for protective
custody on November 8, 2005. K.P.H. waived a probable cause hearing, and on
November 10, 2005, the trial court entered an order that probable cause existed
to believe that K.P.H. presented a Asubstantial
risk of serious harm to self or others.@








At K.P.H.=s
commitment hearing on November 23, 2005, Dr. Eileen Farber, M.D., testified
that K.P.H. had Bipolar I Disorder, a recognized form of mental illness.  She testified that in his last treatment, he
was very disorganized, rambling, paranoid, and delusional in his speech.  In addition, he had been engaged in high-risk
behavior and stated that he was Kay Bailey Hutchinson=s nephew
and Willie Nelson=s half-brother.  He stated that everybody was following him
and that governmental agencies were following him because he won the lottery in
New Orleans and because they wanted their half of the money.  He also stated that he was albino, although
it appeared to Dr. Farber that he was not. 
He stated that he had liver cancer, but nothing indicated that this was
true.

Dr. Farber testified that K.P.H. was persecutory,
grandiose, and somatic and that he looked calmer than the last time she saw
him.  She stated that K.P.H. rode his
bicycle into oncoming traffic and that he bought five new cars, writing hot
checks for thirty thousand dollars.  She
testified that he would present a risk of causing serious harm to himself and
others if released.  She also testified
that his estranged wife is afraid of him because he built shrines for her.  She testified that if not treated, K.P.H.
would continue to suffer physical or emotional distress and that his paranoia
and delusions might cause trouble with others and the criminal justice system.  She testified that he had no insight
regarding his illness and that he lacked the capacity to decide whether to
submit to treatment or administer medications. 
She testified that he had been refusing medications but that medications
are in his best interest. She proposed treating K.P.H. with antipsychotic medication
and mood stabilizers.  She testified that
he does not have the ability to care for himself outside of the facility.








K.P.H. also testified at the commitment
hearing.  He stated that his wife had
asked him to leave home because she wanted a divorce.  He testified that he has liver cancer,
hepatitis C, cirrhosis, high blood pressure, and Graves disease.  He admitted to riding a bicycle into oncoming
traffic one time, claiming that he was trying to get people to leave him
alone.  He testified that when he stopped
by a restaurant near his house, the Department of the Interior, the Department
of the Navy, the Department of the Air Force, highway patrol, and Texas Rangers
were all there eating, and he wanted them to leave him alone.  He denied building shrines to his wife,
claiming that the objects at issue were just leftover trash, including
underwear and broken ketchup bottles.  He
claimed that he had won both the Texas and New Mexico lotteries and that those
tickets were located in a safe deposit box in Paducah, Texas.  He testified several times that he had been
married to his wife for twenty-four years, nine months, and nineteen days.








He also stated that he knows top-secret
information and that his brother, who was in the Army in World War II, told him
what went on in the Ajungle that she tries to act
like is a hospital.@ 
He claimed that he could not divulge that material or else he Awould
have to kill you.@ 
According to K.P.H., the people from whom he was trying to escape on the
bicycle had followed him for over eight thousand miles to pick him up and bring
him down here.  He stated that if he was
released, he would go stay with his sister in Slaton, Texas.  He insisted that he has not refused to take
medications, that he has Anever stopped taking [them]
since they were stolen,@ and that he A[does
not] miss a day unless [he does not] have the money to buy it or it=s taken
away@ from
him.  K.P.H. said he would be willing to
voluntarily take medications and do out-patient therapy if released.  He said there was no reason to have
court-ordered medications.  He also
stated that he had never been in a mental institution.

In addition to hearing oral testimony, the court
judicially noticed two Certificates of Medical Examination and an Alternative
Treatment Recommendation document.  Dr.
Tom Mareth, M.D., examined K.P.H. on November 7, 2005, and his Certificate=s
affidavit stated that on or about November 7, 2005, K.P.H. drove his bicycle
into traffic recklessly.  Dr. Hector
Decena, M.D., examined K.P.H. on November 8, 2005, and his Certificate=s affidavit
stated that on November 8, 2005, K.P.H. did Anothing
significant[,] but prior to admission[,] [he] was walking in [a] heavy traffic
street.@

The Alternative Treatment Recommendation form,
filled out by Laurie Prickett, a crisis interventionist, noted that as a result
of the shrines, K.P.H.=s wife had obtained a protective
order against him.  It also noted that
K.P.H. A[a]pproaches
young female teenagers to spend time with him.@








At the close of the hearing, the court ordered
K.P.H. to hospital commitment for a temporary period, not to exceed ninety days,[2]
and the court noted that it A[would]
authorize treatment as needed for the classes of  [medication].@

In K.P.H.=s first
issue, he argues that the trial court erred by rendering judgment committing
him to court-ordered temporary mental health services because the evidence is
legally and factually insufficient to show a recent overt act or a continuing
pattern of behavior to support the commitment.  Section 574.034(a) of the Texas Health
and Safety Code provides that a judge may order a person to receive court‑ordered
temporary inpatient mental health services only if the judge finds by clear and
convincing evidence that

(1)
the proposed patient is mentally ill; and

 

(2) as a result of that
mental illness the proposed patient:

 

(A) is likely to cause
serious harm to himself;

 

(B) is likely to cause
serious harm to others; or

 








(C) is:

 

(i) suffering severe and
abnormal mental, emotional, or physical distress;

 

(ii) experiencing
substantial mental or physical deterioration of the proposed patient=s ability to function
independently, which is exhibited by the proposed patient's inability, except
for reasons of indigence, to provide for the proposed patient's basic needs,
including food, clothing, health, or safety; and

 

(iii) unable to make a
rational and informed decision as to whether or not to submit to treatment.[3]

 








Clear and convincing evidence is Athat
measure or degree of proof which will produce in the mind of the trier of fact
a firm belief or conviction as to the truth of the allegations sought to be
established.@[4]  To establish clear and convincing evidence
supporting court‑ordered mental health services, the State must produce
expert testimony and, unless waived, evidence of a recent overt act or a
continuing pattern of behavior that tends to confirm either (1) the likelihood
of serious harm to the proposed patient or others or (2) the proposed patient=s
distress and the deterioration of ability to function.[5]  Evidence that reflects only on a patient=s mental
illness and need of hospitalization is insufficient to satisfy the recent overt
act or continuing pattern standard.[6]  Considering the evidence set out above and
applying the appropriate standards of review,[7]
we hold that the evidence in this case is legally and factually sufficient to
support the trial court=s findings.  K.P.H.=s riding
his bicycle into traffic constitutes a recent overt act, which in connection
with his other behavior, tends to confirm that he poses a safety risk to
himself, as well as possibly to others.








K.P.H. claims that both Certificates of Medical
Examination describing the bicycle incident were derived from a suicide
assessment form filled out by Prickett, on November 6, 2005, and are inaccurate
as to the date when K.P.H. was riding the bicycle.  However, the certificates themselves say
that they are based on an evaluation and examination of K.P.H. that occurred on
November 7 and 8, respectively. 
Therefore, it appears that the doctors evaluated K.P.H. after he was
detained and simply indicated the date of the incident as occurring Aon or
about@ the
date on which they evaluated him. 
Although the exact date of the bicycle incident is unclear by viewing
the judicially noticed documents, it is clear that the incident occurred about
two and a half weeks before the hearing and is thus a recent act.  We overrule K.P.H.=s first
issue.

In his second issue, K.P.H. argues that the trial
court erred by ordering the administration of psychoactive medications because
such an order must be based upon a valid order to receive mental health
services.[8]  Because we have held that the order of
commitment for mental health services in K.P.H.=s case
is valid, we overrule his second issue.

In his third issue, K.P.H. argues that the trial
court erred by finding and ordering that the administration of the
antidepressant class of medications to K.P.H. is the proper course of treatment
and in his best interest.  Section
574.106(a-1) provides that the court may issue an order authorizing the
administration of psychoactive medications only if the court finds by clear and
convincing evidence after the hearing that, among other things, treatment with
the proposed medication is in the best interest of the patient.[9]  Subsection (b) provides that in determining
whether treatment with the proposed medication is in the best interest of the
patient, the court shall consider

(1) the patient=s expressed preferences
regarding treatment with psychoactive medication;








(2) the patient=s religious beliefs;

(3) the risks and
benefits, from the perspective of the patient, of taking psychoactive
medication;

(4) the consequences to the patient if the
psychoactive medication is not administered;        

(5) the prognosis for the
patient if the patient is treated with psychoactive medication;

(6) alternative, less
intrusive treatments that are likely to produce the same results as treatment
with psychoactive medication; and

(7) less intrusive
treatments likely to secure the patient=s agreement to take the psychoactive medication.[10]

 

It is uncontested that Dr. Farber made no mention
of antidepressants in her testimony at the hearing but instead suggested
anti-psychotic medication, mood stabilizer, and Asomething
for anxiety.@ 
Thus, K.P.H. argues that there is no evidence in the record that
treatment with antidepressants is in his best interest.








In response, the State contends that Section
574.106(a-1) does not require evidence regarding medication to be testified to at
the hearing, and, according to the statute=s
language, the decision can be made from all the evidence, testimonial or not, after
the hearing.  Dr. Decena, in his
Application for Order to Authorize Psychoactice Medication, indicated that
antidepressants (as well as antipsychotics, anxiolytics/sedatives/hypnotics,
and mood stabilizers) would be a proper course of treatment and in the best
interest of K.P.H.  A copy of this
application was served on K.P.H., it was judicially noticed at the hearing, and
the recommendation went unchallenged at the hearing.  The trial court=s order
indicated that treatment with antidepressants, antipsychotics,
anxiolitics/sedatives/hypnotics, and mood stabilizers is in K.P.H.=s best
interest, and it specifically stated that the court relied on Dr. Decena=s
recommendations in making its decision. 
The court=s reasoning was justifiably
based on this evidence.  Applying the
appropriate standards of review,[11]
we hold that the evidence is legally and factually sufficient to support a
finding that antidepressants are in K.P.H.=s best
interest.  We overrule K.P.H.=s third
issue.

Having overruled all of K.P.H.=s
issues, we affirm the trial court=s
judgment and order.

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL B:   DAUPHINOT, HOLMAN,  and GARDNER, JJ.

DELIVERED:  March 16, 2006











[1]See Tex. R. App. P. 47.4.





[2]We note that although the ninety-day period expired
before we heard this appeal, the principle that appellate courts will not
decide moot propositions does not apply to appeals from involuntary commitments
for temporary hospitalization for a period not to exceed ninety days.  In re R.S.C., 921 S.W.2d 506, 508
(Tex. App.CFort Worth 1996, no writ) (citing State v. Lodge, 608
S.W.2d 910, 912 (Tex. 1980); L.S. v. State, 867 S.W.2d 838, 841 n.2
(Tex. App.CAustin 1993, no writ)).





[3]Tex. Health & Safety Code
Ann. ' 574.034(a) (Vernon
2003).





[4]State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979).





[5]Tex. Health & Safety Code
Ann. ' 574.034(d).





[6]See T.G. v. State, 7 S.W.3d 248, 251-52 (Tex. App.CDallas 1999, no pet.); In re P.W., 801 S.W.2d
1, 3 (Tex. App.CFort Worth 1990, writ denied).





[7]Diamond Shamrock Ref. Co. v. Hall, 168 S.W.3d 164, 170 (Tex. 2005); Sw. Bell Tel.
Co. v. Garza, 164 S.W.3d 607, 622, 625, 627 (Tex. 2004); In re C.H.,
89 S.W.3d 17, 28 (Tex. 2002).





[8]See Tex. Health & Safety Code Ann. ' 574.106(a) (Vernon Supp.
2005).





[9]Id. ' 574.106(a-1).





[10]Id. ' 574.106(b).





[11]See Diamond Shamrock, 168 S.W.3d at 170; Garza, 164 S.W.3d at 622, 625, 627; In
re C.H., 89 S.W.3d at 28.