NO. 07-09-0033-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 13, 2009
______________________________

In the Interest of I.M.F., A Child
                                     _________________________________

FROM THE 27TH DISTRICT COURT OF LAMPASAS COUNTY;

NO. 16,780; HON. BILL BACHUS, PRESIDING
_______________________________

Memorandum Anders Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
          Appellant Morgan Banda had her parental rights to I.M.F. terminated and has
appealed from that order. Her appointed counsel has filed a motion to withdraw, together
with an Anders


 brief wherein he certified that, after diligently searching the record, he has
concluded that the appeal is without merit. Along with his brief, appellate counsel has 
attached a copy of a letter sent to appellant informing her of her right to file a response pro
se. By letter dated January 30, 2009, this court also informed appellant of her right to
tender her own response and set March 2, 2009, as the deadline to do so. To date, we
have not received a response.
          In compliance with the principles enunciated in Anders, appellate counsel discussed
the legal and factual sufficiency of the evidence to support the trial court’s statutory findings
as a basis for termination and the finding that termination is in the best interest of the child. 
However, he has also explained why the evidence is sufficient to support those findings. 
Moreover, we note that no statement of points on appeal or motion for new trial was filed;
so little, if anything, was preserved for appeal. See Tex. Fam. Code Ann. §263.405(i)
(Vernon 2008). We have also conducted our own review of the record to uncover any
reversible error and have found none. 
          Accordingly, the motion to withdraw is granted, and the judgment is affirmed.
 
                                                                           Brian Quinn 
                                                                          Chief Justice
 



"false"
 UnhideWhenUsed="false" QFormat="true" Name="List Paragraph"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0507-CV

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL C

 

AUGUST 16, 2011

 

______________________________

 

 

MICHELLE MOORE, APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

 

 

_________________________________

 

FROM COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;

 

NO. 2009-458,735; HONORABLE DRUE FARMER, JUDGE

 

_______________________________

 

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

            By this
accelerated appeal, Appellant, Michelle Moore appeals the trial court's Order Authorizing Psychoactive Medications issued
following a Judgment of Commitment
Following Competency Exam Incompetent But Likely to
Regain Competency.[1]  By two issues, Appellant contests the legal
and factual sufficiency of the evidence to support that order.  We modify the trial court's order and, as
modified, affirm.

I.  Background Facts

            Appellant
is a female in her mid-forties who has been diagnosed with schizoaffective
disorder with a bipolar component.  She
also experiences grandiose delusions.[2]  After her house was repossessed, in 2003, she
moved into a small trailer in her parents' backyard.  According to her mother, she has credit card
debt and no financial resources.  Her mother
testified that Appellant talks to herself and leaves town for brief periods
only to be brought back by police.  In
2005, she was temporarily committed for treatment after a former boss
threatened to take action if something was not done about her behavior.  At that time she was diagnosed with paranoid
schizophrenia but did not present with an affective mood component.  She was treated with Risperdal,
a psychoactive medication.  However, she
stopped taking her medication because she felt "normal."  

On November 25, 2009, she was
arrested for a nonviolent criminal trespass.[3]  On August 4, 2010, a competency evaluation
was conducted by Dr. Robert D. Morgan to determine whether Appellant was
competent to stand trial on the criminal trespass charge.  Dr. Morgan concluded that with psychotropic
medications and treatment, Appellant could be restored to competency.  He recommended that Appellant participate in treatment
on an outpatient basis but cautioned that if she was not compliant with the
medication it would be necessary to transfer her to inpatient treatment.  

            On
September 13, 2010, Appellant was ordered to participate in an outpatient
program at Sunrise Canyon Hospital.  Dr.
Dianna Kucera, a psychologist, had an initial consultation
with Appellant on October 10, 2010, to explain the competency restoration
process.  Appellant made it clear to Dr. Kucera that she had no interest in taking antipsychotic
medications as part of her treatment.

            For
undetermined reasons, Appellant did not show for her next scheduled appointment
and on November 1, 2010, the trial court signed an order committing her to
Sunrise Canyon Hospital to undergo treatment on an inpatient basis.  According to the judgment of commitment,
Appellant was ordered to be held for a period not to exceed 120 days.

            On
December 8, 2010, pursuant to the Texas Health and Safety Code, Dr. Marsha
Spalding, Medical Director for the Lubbock Regional Mental Health and Mental
Retardation Center, filed an Application for
Order to Administer Psychoactive Medication to Appellant.  In her application she provided, "[p]atient
will continue to be unable to meet her basic needs and will continue to
deteriorate mentally, placing herself at ongoing risk."  Following
a hearing on the application, the trial court signed the order authorizing
Appellant to be treated with psychoactive medication during her inpatient
commitment.  That order is the subject of
this appeal.

II.  Burden of Proof and
Standards of Review 

            In the case
at hand, the State sought to obtain an order authorizing the involuntary
administration of psychoactive medications to Appellant pursuant to the
provisions of section 574.104 of the Texas Health & Safety Code.  See Tex.
Health & Safety Code Ann. § 574.104 (West 2010).[4]  Pursuant to that section, following a hearing
held pursuant to the provisions of section 574.106, a trial court may issue an
order authorizing the administration of one or more classes of psychoactive
medications to a patient who:

(1) is
under a court order to receive inpatient mental health services; or

(2) is
in custody awaiting trial in a criminal proceeding and was ordered to receive
inpatient mental health services in the six months preceding a hearing under
this section.

See §
574.106(a).

            In such proceedings the
State is required to prove its case by clear and convincing evidence.  § 574.034(a). 
The trial court's order is likewise reviewed for clear and convincing
evidence.  State v. K.E.W., 315 S.W.3d 16, 20 (Tex.
2010).  Clear and convincing
evidence is that measure or degree of proof which will produce in the mind of
the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established. See
id. See also State v. Addington,
588 S.W.2d 569, 570 (Tex. 1979).  Under a clear and convincing standard of
review, we apply a heightened standard of review to sufficiency of the evidence
challenges.  See In re C.H., 89 S.W.3d 17, 25 (Tex.
2002).  Evidence that merely exceeds a
scintilla is not legally sufficient when the burden of proof is clear and
convincing.  See In re J.F.C., 96 S.W.3d 256, 264-65
(Tex. 2002).  Furthermore, the trial court is not authorized to
base its findings solely on a physician's application.  State of Texas for the Best Interest and Protection of E.G., 249
S.W.3d 728, 731 (Tex.App.--Tyler 2008, no pet.).  In order to satisfy the clear and convincing
burden of proof, there must be evidence of the factual basis of an expert
opinion.  Id. at 732.

            A.  Legal Sufficiency

In evaluating evidence for legal
sufficiency, we review all the evidence in the light most favorable to the
finding to determine whether a reasonable factfinder could have formed a firm
belief or conviction that the finding was true. 
In re J.F.C.,
96 S.W.3d at 266.  We resolve
disputed fact questions in favor of the finding if a reasonable factfinder
could have done so.  City of Keller v. Wilson, 168 S.W.3d
802, 817 (Tex. 2005); In re J.F.C.,
96 S.W.3d at 266.  

B. Factual Sufficiency

            In
reviewing the factual sufficiency to support the finding, we ask whether the
evidence is such that a factfinder could reasonably form a firm belief or
conviction about the truth of the State's allegations.  In re J.F.C., 96 S.W.3d at 266.  If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction, then the evidence is factually
insufficient.  Id.  An appellate court
should detail in its opinion why it has concluded that a reasonable factfinder
could not have credited disputed evidence in favor of the finding.  Id. at 266-67.

III.  Applicable Law

            Appellant
does not challenge the trial court's November 1, 2010 Judgment of Commitment, committing her to the Sunrise Canyon
Hospital for inpatient mental health services.  
Therefore, we will only review Appellant's legal and factual sufficiency
challenges to the trial court's order authorizing the involuntary
administration of psychoactive medications.

            Pursuant
to the provisions of section 574.106(a-1), a trial court may issue an order authorizing
psychoactive medication only if it finds by clear and convincing evidence after
the hearing:

(1) that
the patient lacks the capacity to make a decision regarding the administration
of the proposed medication and treatment with the proposed medication is in the
best interest of the patient; or

(2) if
the patient was ordered to receive inpatient mental health services by a
criminal court with jurisdiction over the patient, that treatment with the
proposed medication is in the best interest of the patient and either:

(A) the patient presents a
danger to the patient or others in the inpatient mental health facility in
which the patient is being treated as a result of a mental disorder or mental
defect as determined under Section 574.1065; or

(B) the
patient:

(i)
has remained confined in a correctional facility . . . for a period exceeding
72 hours while awaiting transfer for competency restoration treatment; and

(ii) presents
a danger to the patient or others in the correctional facility as a result of a
mental disorder or mental defect as determined under Section 574.1065.

See §
574.106(a-1).  (Emphasis added). 

            In
making a finding under section 574.106(a-1)(2) that,
as a result of a mental disorder or mental defect, the patient presents a
danger, the court shall consider:

(1) an assessment of the
patient's present mental condition; 

 

(2) whether the patient has inflicted, attempted to
inflict, or made a serious threat of inflicting substantial physical harm to
the patient's self or to another while in the facility; and 

 

(3) whether the patient, in
the six months preceding the date the patient was placed in the facility, has
inflicted, attempted to inflict, or made a serious threat of inflicting
substantial physical harm to another that resulted in the patient being placed
in the facility.  

 

See §
574.1065.

            In
making a best interest finding, the trial court shall consider:

(1) the
patient's expressed preferences regarding treatment with psychoactive
medication;

(2) the
patient's religious beliefs;

(3) the
risks and benefits, from the perspective of the patient, of taking psychoactive
medication;

(4) the
consequences to the patient if the psychoactive medication is not administered;

(5) the
prognosis for the patient if the patient is treated with psychoactive
medication;

(6) alternative,
less intrusive treatments that are likely to produce the same results as
treatment with psychoactive medication; and

(7) less
intrusive treatments likely to secure the patient's agreement to take the
psychoactive medication.

See § 574.106(b).

IV.  Analysis

            An individual has a constitutionally
protected liberty interest in avoiding the involuntary administration of
antipsychotic drugs.  Sell v. United States, 539 U.S. 166,
178, 123 S.Ct. 2174, 156 L.Ed.2d 197.  The United States Constitution permits the
government to involuntarily administer antipsychotic drugs to a mentally ill
defendant facing serious criminal charges in order to render that defendant
"competent to stand trial, but only if the treatment is medically
appropriate, is substantially unlikely to have side effects that may undermine
the fairness of the trial, and, taking account of less intrusive alternatives,
is necessary to further important governmental trial-related interests.  539 U.S. at 179.  Because it is not raised by the issues in
this case, we make no finding as to whether or not a nonviolent misdemeanor criminal trespass is a "serious criminal
charge."

            Generally speaking then,
under an application for court-ordered administration of psychoactive
medications filed pursuant to section 574.104, if the patient was ordered to
receive inpatient mental health services by a criminal court having
jurisdiction over the patient, a trial court is authorized to order the
involuntary administration of psychoactive medications if either (1) the patient lacks the capacity to make an informed
decision and the proposed treatment is in the patient's best interest, or (2) the patient presents a danger to
herself or others in the inpatient mental health facility and the proposed
treatment is in the patient's best interest.

            In its order, the trial court made
the following findings:

(1)
[Appellant] lacks the capacity to make a decision regarding the administration
of the proposed medication;

(2)
[Appellant] presents a danger to herself or others in Sunrise Canyon Hospital
as a result of mental illness as determined under Section 574.1065 of the Texas
Health and Safety Code; and

(3) Treatment
with the proposed medication is in the best interest of [Appellant].

            A. 
Lack of Capacity

As used in section 547.106(a-1)(1),
capacity means a patient's ability to (1) understand the nature and
consequences of a proposed treatment, including the benefits, risks, and
alternatives to the proposed treatment, and (2) make a decision whether to
undergo the proposed treatment.  §
574.101(1).            

Dr. Spalding testified
unequivocally that Appellant lacks the capacity to determine whether to take
medication because she does not believe she has a mental illness. According to
her outpatient clinic chart, Appellant has been noncompliant with her
medication since 1997.  Regarding Dr. Vahora's testimony on lack of capacity, we agree with
Appellant that he began with a conclusory statement, i.e., "I understand
she is mentally ill and, therefore, requires medication."  However, he then explained that she suffers
from persecutory delusions and has no judgment or insight.  He also echoed Dr. Spalding's testimony that
Appellant does not believe she has a mental illness.

During the hearing on the application
to administer psychoactive medication, Dr. Spalding testified she wanted to
treat Appellant with the injectable form of Risperdal, a psychoactive medication, and Ativan, an anti-anxiety medication.  She explained that Ativan
is administered to help relieve anxiety because Risperdal
takes two weeks to become effective.  She
explained her preference for the injectable form over
the oral form because there would be no need to remember a daily pill and staff
does not "shove medicine down patients' throats . . . ."  Dr. Spalding's treatment would include
beginning with a low dosage and careful monitoring for side effects.  The most common side effects are sedation and
symptoms resembling those of Parkinson's disease.  Dr. Spalding also testified that first
generation anti-psychotics could produce tardive dyskinesia (TD), a neurological condition with unpleasant
side effects.  However, according to Dr.
Spalding, she has never seen extreme side effects of TD with Risperdal, which is a second-generation medication.  Dr. Spalding was confident that if a patient
remains on Risperdal, TD would not present itself.

Dr. Vahora
testified that Appellant had been treated with Risperdal
when previously committed in 2005, but ceased taking the drug because she felt
"normal."  Dr. Spalding testified
that Appellant denied having taken Risperdal in the
past.  The expert testimony and
Appellant's resistance to medication demonstrates Appellant's lack of capacity
to understand that nature and consequences of a proposed treatment and her
inability to make a decision to undergo treatment.  The trial court's finding on lack of capacity
is supported by clear and convincing evidence. 


 

B.  Danger to Self or Others

            According to section 574.106(a-1)(2)(A), the danger element focuses on the patient or others
in the inpatient mental health facility in which the patient is being
treated.  Dr. Spalding gave a conclusory
opinion that based on Appellant's delusions, she
presents a danger to herself or others. 
She testified that Appellant is loud and verbally intimidating.  However, she also testified that Appellant
did not behave in an assaultive or aggressive manner and did not strike
anyone.  She could not point to any
specific behavior that would conclude a person to believe Appellant was a
danger to herself or others.

            Dr. Vahora testified that when Appellant was first committed,
she was not "acute."  When
asked to explain, he testified that she was not disruptive, unlike some patients
who require immediate medication because of aggression, violence, disruptive
behavior or dangerousness.  He also
testified he had not observed suicidal or homicidal ideations.  He described an "indirect danger"
that could not be defined.  In terms of danger,
he could only testify to deterioration in Appellant's illness and impaired
judgment.

            Dr. Dianna Kucera,
Appellant's treating psychologist during outpatient treatment, testified that
nothing in Appellant's records indicated she was a threat or danger.  Appellant's mother testified that she had
never seen Appellant do anything physical to make her believe she was
dangerous.  We find the evidence of
dangerousness is far less than what is required to produce in the mind of the
trier of fact a firm belief or conviction as to its truth.  The trial court's finding that Appellant
presented a danger to herself or others in Sunrise Canyon Hospital as a result
of mental illness is not supported by clear and convincing evidence.

            C.  Best
Interest[5]

            In making a best interest finding the
trial court was required to consider Appellant's preference on taking
medications, her religious beliefs, risks and benefits from her perspective, consequences
if medication is not administered, her prognosis with medication, alternative,
less intrusive treatments and less intrusive treatments likely to secure her
cooperation to take the medication.  See § 574.106(b).  The record is replete with evidence that it
was in Appellant's best interest to be treated with psychoactive medication.

            The testimony resonates with
Appellant's desire not to take psychoactive medication.  However, Dr. Spalding and Dr. Vahora both testified that psychoactive medication would
minimize Appellant's delusions or possibly eliminate them and allow her to lead
a productive life.   Dr. Spalding
testified that without medications, Appellant's prognosis in regaining
competence was "very guarded" and her delusions would get worse.  Without treatment, she would suffer from
mental illness for the rest of her life. 
Although we have concluded that Appellant did not present a danger to
herself or others in this case, the medical experts testified that without
medication, they were concerned she would act out on her persecutory delusions
in the future and potentially cause harm to herself or others.  During her testimony, Dr. Spalding was asked
by the trial court whether taking the psychoactive medication would yield
greater compliance from a patient to which she responded,
"[a]bsolutely."

            Dr. Spalding testified in great
detail about the proposed medications and their potential side effects.  She compared what she described as first
generation medications with second generation medications such as Risperdal, which are much improved.  She also testified to medications available to
treat side effects.  

            Both doctors testified that there
are no less intrusive treatments for Appellant and that the benefits of
treatment greatly outweigh the side effects. 
Dr. Vahora testified that with medication
"there's almost miraculous improvements in many
patients when they gain insight, and they understand they need medications . .
. ."  Dr. Vahora
and Dr. Kucera were both asked whether treatment with
psychoactive medication could give a patient a sense that a bag is over the
patient's head all the time.  Both
responded that some patients may have that experience.  However, no evidence was presented that
Appellant has ever suffered that side effect. 
Dr. Vahora boldly declared it would be
negligence not to pursue compelled medication to treat Appellant's illness.  No evidence was presented about Appellant's
religious beliefs.  We find there is
clear and convincing evidence to support the trial court's finding that
treatment with the proposed medication is in Appellant's best interest.  

            Issues one
and two are sustained as to the trial court's finding that Appellant presented
a danger to herself or others at the Sunrise Canyon Hospital as a result of
mental illness, and they are overruled as to the trial court's finding that
Appellant lacked the capacity to make a decision regarding the administration
of the proposed medication and that the proposed treatment was in her best
interest.  

Conclusion

            Having concluded there was no
evidence to support the trial court's finding that
"[Appellant] presents a danger to herself or others in Sunrise Canyon
Hospital as a result of mental illness as determined under Section 574.106 of
the Texas Health and Safety Code," we delete that finding from the trial
court's order.  As modified, we affirm
the trial court's Order Authorizing
Psychoactive Medications.

 

                                                                                    Patrick A. Pirtle

                                                                                          Justice

 

 











[1]During
oral submission of this appeal, counsel for both parties were directed to
submit documentation on whether Appellant was still subject to the Judgment of Commitment in order to make
a determination whether this appeal should be rendered moot.  The State filed an affidavit in which counsel
averred that Appellant had been restored to competency and had been released
from Sunrise Canyon Hospital.  Counsel
for Appellant filed a supplemental brief arguing against mootness.  We agree with counsel that this appeal is not
moot.  See Lodge v. State, 608 S.W.2d 910, 911 (Tex.1980) (holding that
the mootness doctrine does not apply to appeals from temporary commitment
cases).  It is indisputable that
commitment to a mental hospital "can engender adverse social consequences
to the individual" whether it is labeled a "stigma" or if it is
called something else.  Id. (citing Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323
(1979)).  The underlying reasoning of the
Court's decision in Lodge was applied
to an appeal from an order requiring the administration of psychoactive
medication in J.M. v. State, 178
S.W.3d 185, 189 (Tex.App.--Houston [1st Dist.] 2005, no pet.).  See
State v. K.E.W., 315 S.W.3d 16, 20 (Tex. 2010) (noting that the expiration
of the time for which [K.E.W.] was ordered to receive temporary inpatient
mental health services did not require the appeal to be dismissed for
mootness).

 





[2]Some
of her delusions include people floating in her bloodstream; a government
conspiracy praying on women her age who extract fetuses and place them in jars
or other women's uteruses; she has 300 to 500 children because of the
conspiracy; she believes a person is sutured to her body; her mother has been
cloned; and persecutory delusions that she has been raped and sexually
harassed.

 





[3]According
to the police report, Appellant refused to leave Lubbock Cosmetology [College]
after being asked several times to do so.

 





[4]Unless
otherwise indicated, this and all future references to "section" or
"§" are references to Tex. Health & Safety Code Ann. (West 2010).






[5]It
is noteworthy to mention that in her brief, Appellant does not challenge the
trial court's finding that treatment with psychoactive medication is in her
best interest.  However, in the interest
of justice and judicial economy, we address the finding.