NO. 07-10-0507-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

AUGUST 16, 2011

_____

MICHELLE MOORE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;

NO. 2009-458,735; HONORABLE DRUE FARMER, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

By this accelerated appeal, Appellant, Michelle Moore appeals the trial court's

*Order Authorizing Psychoactive Medications* issued following a *Judgment of*

*Commitment Following Competency Exam Incompetent But Likely to Regain*

*Competency.*[1]  By two issues, Appellant contests the legal and factual sufficiency of the

---

[1]During oral submission of this appeal, counsel for both parties were directed to submit documentation on whether Appellant was still subject to the *Judgment of Commitment* in order to make a determination

evidence to support that order.  We modify the trial court's order and, as modified, affirm.

## I. Background Facts

Appellant is a female in her mid-forties who has been diagnosed with schizoaffective disorder with a bipolar component.  She also experiences grandiose delusions.[2]  After her house was repossessed, in 2003, she moved into a small trailer in her parents' backyard.  According to her mother, she has credit card debt and no financial resources.  Her mother testified that Appellant talks to herself and leaves town for brief periods only to be brought back by police.  In 2005, she was temporarily committed for treatment after a former boss threatened to take action if something was not done about her behavior.  At that time she was diagnosed with paranoid schizophrenia but did not present with an affective mood component.  She was treated with Risperdal, a psychoactive medication.  However, she stopped taking her medication because she felt "normal."

whether this appeal should be rendered moot.  The State filed an affidavit in which counsel averred that Appellant had been restored to competency and had been released from Sunrise Canyon Hospital. Counsel for Appellant filed a supplemental brief arguing against mootness.  We agree with counsel that this appeal is not moot.  *See Lodge v. State*, 608 S.W.2d 910, 911 (Tex.1980) (holding that the mootness doctrine does not apply to appeals from temporary commitment cases).  It is indisputable that commitment to a mental hospital "can engender adverse social consequences to the individual" whether it is labeled a "stigma" or if it is called something else.  *Id.* (citing *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)).  The underlying reasoning of the Court's decision in *Lodge* was applied to an appeal from an order requiring the administration of psychoactive medication in *J.M. v. State*, 178 S.W.3d 185, 189 (Tex.App.--Houston [1st Dist.] 2005, no pet.).  *See State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (noting that the expiration of the time for which [K.E.W.] was ordered to receive temporary inpatient mental health services did not require the appeal to be dismissed for mootness).

[2]Some of her delusions include people floating in her bloodstream; a government conspiracy praying on women her age who extract fetuses and place them in jars or other women's uteruses; she has 300 to 500 children because of the conspiracy; she believes a person is sutured to her body; her mother has been cloned; and persecutory delusions that she has been raped and sexually harassed.

On November 25, 2009, she was arrested for a nonviolent criminal trespass.[3] On August 4, 2010, a competency evaluation was conducted by Dr. Robert D. Morgan to determine whether Appellant was competent to stand trial on the criminal trespass charge. Dr. Morgan concluded that with psychotropic medications and treatment, Appellant could be restored to competency. He recommended that Appellant participate in treatment on an outpatient basis but cautioned that if she was not compliant with the medication it would be necessary to transfer her to inpatient treatment.

On September 13, 2010, Appellant was ordered to participate in an outpatient program at Sunrise Canyon Hospital. Dr. Dianna Kucera, a psychologist, had an initial consultation with Appellant on October 10, 2010, to explain the competency restoration process. Appellant made it clear to Dr. Kucera that she had no interest in taking antipsychotic medications as part of her treatment.

For undetermined reasons, Appellant did not show for her next scheduled appointment and on November 1, 2010, the trial court signed an order committing her to Sunrise Canyon Hospital to undergo treatment on an inpatient basis. According to the judgment of commitment, Appellant was ordered to be held for a period not to exceed 120 days.

On December 8, 2010, pursuant to the Texas Health and Safety Code, Dr. Marsha Spalding, Medical Director for the Lubbock Regional Mental Health and Mental Retardation Center, filed an *Application for Order to Administer Psychoactive*

---

[3]According to the police report, Appellant refused to leave Lubbock Cosmetology [College] after being asked several times to do so.

*Medication* to Appellant. In her application she provided, "[p]atient will continue to be unable to meet her basic needs and will continue to deteriorate mentally, placing herself at ongoing risk." Following a hearing on the application, the trial court signed the order authorizing Appellant to be treated with psychoactive medication during her inpatient commitment. That order is the subject of this appeal.

## II. Burden of Proof and Standards of Review

In the case at hand, the State sought to obtain an order authorizing the involuntary administration of psychoactive medications to Appellant pursuant to the provisions of section 574.104 of the Texas Health & Safety Code. *See* Tex. Health & Safety Code Ann. § 574.104 (West 2010).[4] Pursuant to that section, following a hearing held pursuant to the provisions of section 574.106, a trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who:

(1) is under a court order to receive inpatient mental health services; or

(2) is in custody awaiting trial in a criminal proceeding and was ordered to receive inpatient mental health services in the six months preceding a hearing under this section.

*See* § 574.106(a).

In such proceedings the State is required to prove its case by clear and convincing evidence. § 574.034(a). The trial court's order is likewise reviewed for clear and convincing evidence. *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). Clear and convincing evidence is that measure or degree of proof which will produce in the mind

---

[4]Unless otherwise indicated, this and all future references to "section" or "§" are references to Tex. Health & Safety Code Ann. (West 2010).

4

of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See id. See also State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). Under a clear and convincing standard of review, we apply a heightened standard of review to sufficiency of the evidence challenges. *See In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002). Evidence that merely exceeds a scintilla is not legally sufficient when the burden of proof is clear and convincing. *See In re J.F.C.*, 96 S.W.3d 256, 264-65 (Tex. 2002). Furthermore, the trial court is not authorized to base its findings solely on a physician's application. *State of Texas for the Best Interest and Protection of E.G.*, 249 S.W.3d 728, 731 (Tex.App.--Tyler 2008, no pet.). In order to satisfy the clear and convincing burden of proof, there must be evidence of the factual basis of an expert opinion. *Id.* at 732.

### A. Legal Sufficiency

In evaluating evidence for legal sufficiency, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266.

### B. Factual Sufficiency

In reviewing the factual sufficiency to support the finding, we ask whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re J.F.C.*, 96 S.W.3d at 266. If, in light of the

5

entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* An appellate court should detail in its opinion why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding. *Id.* at 266-67.

## III. Applicable Law

Appellant does not challenge the trial court's November 1, 2010 *Judgment of Commitment,* committing her to the Sunrise Canyon Hospital for inpatient mental health services. Therefore, we will only review Appellant's legal and factual sufficiency challenges to the trial court's order authorizing the involuntary administration of psychoactive medications.

Pursuant to the provisions of section 574.106(a-1), a trial court may issue an order authorizing psychoactive medication only if it finds by clear and convincing evidence after the hearing:

> (1) that the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient; *or*
>
> (2) if the patient was ordered to receive inpatient mental health services by a criminal court with jurisdiction over the patient, that treatment with the proposed medication is in the best interest of the patient and either:
>
>> (A) the patient presents a danger to the patient or others in the inpatient mental health facility in which the patient is being treated as a result of a mental disorder or mental defect as determined under Section 574.1065; *or*
>>
>> (B) the patient:

(i) has remained confined in a correctional facility . . . for a period exceeding 72 hours while awaiting transfer for competency restoration treatment; *and*

(ii) presents a danger to the patient or others in the correctional facility as a result of a mental disorder or mental defect as determined under Section 574.1065.

*See* § 574.106(a-1).  (Emphasis added).

In making a finding under section 574.106(a-1)(2) that, as a result of a mental disorder or mental defect, the patient presents a danger, the court shall consider:

(1) an assessment of the patient's present mental condition;

(2) whether the patient has inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm to the patient's self or to another while in the facility; and

(3) whether the patient, in the six months preceding the date the patient was placed in the facility, has inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm to another that resulted in the patient being placed in the facility.

*See* § 574.1065.

In making a best interest finding, the trial court shall consider:

(1) the patient's expressed preferences regarding treatment with psychoactive medication;

(2) the patient's religious beliefs;

(3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;

(4) the consequences to the patient if the psychoactive medication is not administered;

(5) the prognosis for the patient if the patient is treated with psychoactive medication;

(6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication; and

(7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication.

*See* § 574.106(b).

## IV. Analysis

An individual has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs. *Sell v. United States*, 539 U.S. 166, 178, 123 S.Ct. 2174, 156 L.Ed.2d 197. The United States Constitution permits the government to involuntarily administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant "competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary to further important governmental trial-related interests." 539 U.S. at 179. Because it is not raised by the issues in this case, we make no finding as to whether or not a nonviolent misdemeanor criminal trespass is a "serious criminal charge."

Generally speaking then, under an application for court-ordered administration of psychoactive medications filed pursuant to section 574.104, if the patient was ordered to receive inpatient mental health services by a criminal court having jurisdiction over the patient, a trial court is authorized to order the involuntary administration of psychoactive medications if *either* (1) the patient lacks the capacity to make an informed decision and the proposed treatment is in the patient's best interest, *or* (2) the patient

8

presents a danger to herself or others in the inpatient mental health facility and the proposed treatment is in the patient's best interest.

In its order, the trial court made the following findings:

(1) [Appellant] lacks the capacity to make a decision regarding the administration of the proposed medication;

(2) [Appellant] presents a danger to herself or others in Sunrise Canyon Hospital as a result of mental illness as determined under Section 574.1065 of the Texas Health and Safety Code; and

(3) Treatment with the proposed medication is in the best interest of [Appellant].

## A. Lack of Capacity

As used in section 547.106(a-1)(1), capacity means a patient's ability to (1) understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. § 574.101(1).

Dr. Spalding testified unequivocally that Appellant lacks the capacity to determine whether to take medication because she does not believe she has a mental illness. According to her outpatient clinic chart, Appellant has been noncompliant with her medication since 1997. Regarding Dr. Vahora's testimony on lack of capacity, we agree with Appellant that he began with a conclusory statement, i.e., "I understand she is mentally ill and, therefore, requires medication." However, he then explained that she suffers from persecutory delusions and has no judgment or insight. He also echoed Dr. Spalding's testimony that Appellant does not believe she has a mental illness.

9

During the hearing on the application to administer psychoactive medication, Dr. Spalding testified she wanted to treat Appellant with the injectable form of Risperdal, a psychoactive medication, and Ativan, an anti-anxiety medication. She explained that Ativan is administered to help relieve anxiety because Risperdal takes two weeks to become effective. She explained her preference for the injectable form over the oral form because there would be no need to remember a daily pill and staff does not "shove medicine down patients' throats . . . ." Dr. Spalding's treatment would include beginning with a low dosage and careful monitoring for side effects. The most common side effects are sedation and symptoms resembling those of Parkinson's disease. Dr. Spalding also testified that first generation anti-psychotics could produce tardive dyskinesia (TD), a neurological condition with unpleasant side effects. However, according to Dr. Spalding, she has never seen extreme side effects of TD with Risperdal, which is a second-generation medication. Dr. Spalding was confident that if a patient remains on Risperdal, TD would not present itself.

Dr. Vahora testified that Appellant had been treated with Risperdal when previously committed in 2005, but ceased taking the drug because she felt "normal." Dr. Spalding testified that Appellant denied having taken Risperdal in the past. The expert testimony and Appellant's resistance to medication demonstrates Appellant's lack of capacity to understand that nature and consequences of a proposed treatment and her inability to make a decision to undergo treatment. The trial court's finding on lack of capacity is supported by clear and convincing evidence.

**B. Danger to Self or Others**

According to section 574.106(a-1)(2)(A), the danger element focuses on the patient or others in the inpatient mental health facility in which the patient is being treated. Dr. Spalding gave a conclusory opinion that based on Appellant's delusions, she presents a danger to herself or others. She testified that Appellant is loud and verbally intimidating. However, she also testified that Appellant did not behave in an assaultive or aggressive manner and did not strike anyone. She could not point to any specific behavior that would conclude a person to believe Appellant was a danger to herself or others.

Dr. Vahora testified that when Appellant was first committed, she was not "acute." When asked to explain, he testified that she was not disruptive, unlike some patients who require immediate medication because of aggression, violence, disruptive behavior or dangerousness. He also testified he had not observed suicidal or homicidal ideations. He described an "indirect danger" that could not be defined. In terms of danger, he could only testify to deterioration in Appellant's illness and impaired judgment.

Dr. Dianna Kucera, Appellant's treating psychologist during outpatient treatment, testified that nothing in Appellant's records indicated she was a threat or danger. Appellant's mother testified that she had never seen Appellant do anything physical to make her believe she was dangerous. We find the evidence of dangerousness is far less than what is required to produce in the mind of the trier of fact a firm belief or conviction as to its truth. The trial court's finding that Appellant presented a danger to

11

herself or others in Sunrise Canyon Hospital as a result of mental illness is not supported by clear and convincing evidence.

## C. Best Interest[5]

In making a best interest finding the trial court was required to consider Appellant's preference on taking medications, her religious beliefs, risks and benefits from her perspective, consequences if medication is not administered, her prognosis with medication, alternative, less intrusive treatments and less intrusive treatments likely to secure her cooperation to take the medication. *See* § 574.106(b). The record is replete with evidence that it was in Appellant's best interest to be treated with psychoactive medication.

The testimony resonates with Appellant's desire not to take psychoactive medication. However, Dr. Spalding and Dr. Vahora both testified that psychoactive medication would minimize Appellant's delusions or possibly eliminate them and allow her to lead a productive life. Dr. Spalding testified that without medications, Appellant's prognosis in regaining competence was "very guarded" and her delusions would get worse. Without treatment, she would suffer from mental illness for the rest of her life. Although we have concluded that Appellant did not present a danger to herself or others in this case, the medical experts testified that without medication, they were concerned she would act out on her persecutory delusions in the future and potentially cause harm to herself or others. During her testimony, Dr. Spalding was asked by the trial court

---

[5]It is noteworthy to mention that in her brief, Appellant does not challenge the trial court's finding that treatment with psychoactive medication is in her best interest. However, in the interest of justice and judicial economy, we address the finding.

whether taking the psychoactive medication would yield greater compliance from a patient to which she responded, "[a]bsolutely."

Dr. Spalding testified in great detail about the proposed medications and their potential side effects. She compared what she described as first generation medications with second generation medications such as Risperdal, which are much improved. She also testified to medications available to treat side effects.

Both doctors testified that there are no less intrusive treatments for Appellant and that the benefits of treatment greatly outweigh the side effects. Dr. Vahora testified that with medication "there's almost miraculous improvements in many patients when they gain insight, and they understand they need medications . . . ." Dr. Vahora and Dr. Kucera were both asked whether treatment with psychoactive medication could give a patient a sense that a bag is over the patient's head all the time. Both responded that some patients may have that experience. However, no evidence was presented that Appellant has ever suffered that side effect. Dr. Vahora boldly declared it would be negligence not to pursue compelled medication to treat Appellant's illness. No evidence was presented about Appellant's religious beliefs. We find there is clear and convincing evidence to support the trial court's finding that treatment with the proposed medication is in Appellant's best interest.

Issues one and two are sustained as to the trial court's finding that Appellant presented a danger to herself or others at the Sunrise Canyon Hospital as a result of mental illness, and they are overruled as to the trial court's finding that Appellant lacked

the capacity to make a decision regarding the administration of the proposed medication and that the proposed treatment was in her best interest.

## Conclusion

Having concluded there was no evidence to support the trial court's finding that "[Appellant] presents a danger to herself or others in Sunrise Canyon Hospital as a result of mental illness as determined under Section 574.106 of the Texas Health and Safety Code," we delete that finding from the trial court's order. As modified, we affirm the trial court's *Order Authorizing Psychoactive Medications*.

Patrick A. Pirtle
Justice